# Case No. 9,673.

## MITCHELL v. WINSLOW et al.

[2 Story, 630;[1] 6 Law Rep. 347.]

Circuit Court, D. Maine. Oct., 1843.

CHATTEL MORTGAGE—AFTER-ACQUIRED STOCK—BANKRUPTCY—RIGHTS OF ASSIGNEE.

1. Assignees in bankruptcy, except in cases of fraud, take only such rights and interests as

[1] [Reported by William W. Story, Esq.]

the bankrupt himself had, and could himself claim and assert at the time of his bankruptcy; and they are affected with all the equities, which would affect the bankrupt himself, if he were asserting those rights and interests.

[Cited in Fletcher v. Morey, Case No. 4,864; Re Gregg, Id. 5,796; Coggeshall v. Potter, Id. 2,955; Ex parte Ames, Id. 323; Re Arledge, Id. 533; Nichols v. Eaton, Id. 10,-241; Scammon v. Bowers, Id. 12,431; Casey v. La Societe de Credit Mobilier, Id. 2,496; Williamson v. Colcord, Id. 17,752; Rollins v. Twitchell, Id. 12,027; Yeatman v. New Orleans Sav. Inst., 95 U. S. 766; Casey v. Cavaroc, 96 U. S. 487; Re Smith, Case No. 12,990; Thrall v. Crampton, Id. 14,008; Schulze v. Bolting, Id. 12,489; Stewart v. Platt, 101 U. S. 739.]

[Cited in Martin v. Bowen, 51 N. J. Eq. 458, 26 Atl. 825; Hersey v. Elliot, 67 Me. 527. Cited in brief in Williams v. Jackman, 16 Gray, 516. Cited in Gay v. Bidwell, 7 Mich. 532; Brown v. Brabb, 67 Mich. 22, 34 N. W. 405; Kittredge v. Warren, 14 N. H. 532; Kirk v. Roberts (Cal.) 31 Pac. 622; Goodsell v. Benson, 13 R. I. 246; Pond v. Campbell, 56 Vt. 678.]

[See In re Clark, Case No. 2,798.]

2. To make a grant or assignment valid at law, the thing, which is the subject of it, must have an existence, actual or potential, at the time of such grant or assignment. A mere possibility is not assignable.

[Cited in Woodworth v. Sherman, Case No. 18,019. Distinguished in Crampton v. Jerkowski, 2 Fed. 493.]

[Cited in Field v. Mayor, etc., of New York, 6 N. Y. 186. Cited in brief in Hart v. Farmers' & Mechanics' Bank, 33 Vt. 257; Union Manuf'g Co. v. Lounsbury, 41 N. Y. 367.]

3. But courts of equity support assignments, not only of choses in action, but of contingent interests and expectations, and also of things, which have no present actual potential existence, but rest in mere possibility only.

[Cited in Wright v. Shumway, Case No. 18,-093; Coe v. Pennock, Id. 2,942; Brett v. Carter, Id. 1,844; Miller v. Jones, Id. 9,576; Calhoun v. Memphis & P. R. Co., Case No. 2,309. Cited in brief in Pennock v. Coe, 23 How. (64 U. S.) 130. Cited in Toledo, D. & B. R. Co. v. Hamilton, 134 U. S. 300, 10 Sup. Ct. 548. Distinguished in Crampton v. Jerkowski, 2 Fed. 493. Cited in Parker v. New Orleans, B. R. & V. R. Co., 33 Fed. 696.]

[Cited in Apperson v. Moore, 30 Ark. 56; Kane v. Clough, 36 Mich. 439. Cited in brief in France v. Thomas, 86 Mo. 82. Cited in Williams v. Briggs, 11 R. I. 478. Doubted in Chynowith v. Tenney, 10 Wis. 403.]

4. Where a mortgage or a lien is created on chattels by contract, it is competent for the parties to agree, that the possession and use thereof shall be retained by the mortgagor until the breach of the condition, or by the debtor until the creditor shall assert his rights against it as a security for the debt.

[Cited in Fletcher v. Morey, Case No. 4,864; Dunham v. Cincinnati, P. & C. R. Co., 1 Wall. (68 U. S.) 268; Toledo, D. & B. R. Co. v. Hamilton, 134 U. S. 300, 10 Sup. Ct. 548; Brett v. Carter, Case No. 1,844; Miller v. Jones, Id. 9,576.]

[Cited in De Wolf v. Sprague Manuf'g Co., 49 Conn. 289; Edwards v. Peterson, 80 Me. 372, 14 Atl. 937; Reading v. Wilson, 38 N. J. Eq. 446; Ludlum v. Rothschild, 41 Minn. 222, 43 N. W. 137; Grand Forks Nat. Bank v. Minneapolis & N. Elevator Co., 6 Dak. 357, 43 N. W. 808; Pierce v. Langdon (Ida-

ho) 28 Pac. 403: Collins's Appeal, 107 Pa. St. 602; Williams v. Cunningham (Ark.) 12 S. W. 1072.]

5. A. and B. being engaged, in 1839, in the manufacture of cutlery, borrowed of C. a sum of money, payable in four years, with interest semi-annually, and on the same day gave him a deed of all the machinery in their manufactory, with all the tools and implements of every kind thereunto belonging and appertaining, together with all the tools and machinery for the use of the said manufactory, which they might at any time purchase for four years from that date, and also all the stock, which they might manufacture or purchase during the said four years. On the 26th of August, 1842, A. and B. filed their petition to be declared bankrupts, and subsequently were so declared, and an assignee was appointed. On July 16th, 1842, for breach of the conditions of the mortgage, the agent of C. took possession of the property, including the machinery, &c. which was in the possession of the factory when the mortgage was made, and also machinery, tools, and stock in trade, which had been made and purchased after the execution of the mortgage. On petition of the assignee in bankruptcy of A. and B. for an order of court authorizing him to take possession, it was held that the mortgage and the possession taken on July 16th, 1842, constituted such a lien in favor of the mortgagee to the property acquired subsequent to the time of executing the mortgage, as is protected under the provision in the second section of the bankrupt act [of 1841 (5 Stat. 440)].

[Cited in Scammon v. Bowers, Case No. 12,431; Sixpenny Sav. Bank v. Estate of Stuyvesant Bank, Id. 12,919; Re Baker, Id. 762; Brett v. Carter, Id. 1,844; Barnard v. Norwich & W. R. Co., Id. 1,007; Ellett v. Butt. Id. 4,384; Whithed v. Pillsbury, Id. 17,572. Distinguished in Crampton v. Jerkowski, 2 Fed. 493. Cited in Freights of The Kate, 63 Fed. 714.]

[Cited in brief in Tucker v. Daly, 7 Grat. 331. Distinguished in Gay v. Bidwell, 7 Mich. 525. Approved in Wright v. Bircher, 72 Mo. 187. Cited in brief in France v. Thomas, 86 Mo. 81. Cited in First Nat. Bank v. Turnbull, 32 Grat. 701; Parker v. Jacobs. 14 S. C. 112; Pierce v. Emery, 32 N. H. 506; Griffith v. Douglass, 73 Me. 537; Collins' Appeal, 107 Pa. St. 602; Cook v. Corthell, 11 R. I. 491.]

6. Such stipulations in a mortgage, in regard to property subsequently acquired, protect such property from other creditors of the mortgagor.

[Cited in National Shoe & Leather Bank v. Small, 7 Fed. 842.]

[Distinguished in Hoyle v. Plattsburgh & M. R. Co., 54 N. Y. 321. Cited in McCaffrey v. Woodin, 65 N. Y. 467; Parker v. Jacobs. 14 S. C. 112; Cook v. Corthell, 11 R. I. 489; Collins' Appeal, 107 Pa. St. 602. Cited in brief in Collender Co. v. Marshall, 57 Vt. 234.]

7. Quaere, as to the effect at law of such stipulations, in a controversy between a first and second mortgagee, as to property acquired, and in esse after the execution of the first mortgage, and before the execution of the second, both the mortgagees being bonâ fide purchasers for a valuable consideration, and the second mortgagee having no notice of the prior incumbrance.

[Cited in Gregg v. Sanford, 24 Ill. 20; Hamlin v. Jerrard, 72 Me. 76; Cook v. Corthell, 11 R. I. 487. Distinguished in Jones v. Richardson, 10 Metc. (Mass.) 488. Cited in brief in France v. Thomas, 86 Mo. 82.]

This was a petition of Mitchell, assignee of George and David N. Ropes, praying for an

order of court, authorizing him to take possession of certain property in the possession of Neal Dow, one of the respondents, and alleged to belong to the estate of the bankrupts. The facts were these; in 1839, the Messrs. Ropes were engaged in the manufacture of cutlery in Westbrook, and on the first of December of that year, borrowed of Jeremiah Winslow, of Havre, in the kingdom of France, $15,000, payable in four years, with interest semi-annually, and on the same day made and executed a deed, conveying to Winslow "all and singular all the machinery of every kind, which is in and belonging to our cutlery manufactory at Saccarappa, in Westbrook, with all the tools and implements of every kind thereunto belonging and appertaining, together with all the tools and machinery for the use of said manufactory, which we may at any time purchase for four years from this date, and also all the stock which we may manufacture or purchase during said four years. To have and to hold, &c." (with covenants of title and warranty, &c.) "Provided, nevertheless, that if the Ropeses paid to Winslow, within four years, the principal sum borrowed, with interest, semi-annually, then the deed, with certain notes of hand given to secure the same, to be void. Provided, also, until default of or in the payment of said sums of money, or of some part thereof, or of the interest therefor, contrary to the true intent and meaning of the preceding proviso, it shall and may be lawful to and for the said George and David N. Ropes, their heirs and assigns, quietly and peaceably, to hold and enjoy, all and singular the premises hereby granted, and to secure and take the rents and profits therefor, to and for their own use and benefit, without denial or interruption of or by the said Jeremiah, his heirs or assigns, or any other person or persons claiming by or under him." This deed was duly recorded in the records of the town of Westbrook, pursuant to the provision of the law of the state. On the 12th of July, 1842, the bankrupts stopped payment, and on the 26th of August, filed their petition to take the benefit of the bankrupt law, and were duly declared bankrupts by a decree of the court, on the 25th of October, 1842. On the 16th of July, 1842, the interest on the notes being in arrear and unpaid, Nathan Winslow, as the agent of Jeremiah, who was then absent from the country, took possession of the property, and on the —— of October, before the filing of the petition of the assignee of the Ropeses, sold the property to Neal Dow. The bankrupts continued their business up to the 12th of July last, when they stopped payment, and in the property on hand on the 16th of July, when the agent of Winslow took possession for breach of the conditions of the mortgage, were included the machinery and tools, which were in the factory, and in possession of the bankrupts, when the deed was executed, and also, other machinery, tools, and stock in trade, which

had been made and purchased after the execution of the deed.

The case came on to be heard in the district court, on a petition and answer, and the district judge ordered the following questions, arising on the facts stated in the petition and answer, to be adjourned into the circuit court for a final decision. [Case unreported.]

1. Whether the deed of mortgage executed by George and David N. Ropes, on the first of December, 1839, together with possession, taken July 16th, 1842, by N. Winslow as agent of Jeremiah Winslow, created such a lien in favor of the mortgagee, on the machinery, tools and stock in trade, acquired by the mortgagors, either by purchase or otherwise, and put into the factory subsequent to the time of executing the mortgage deed, as is protected under the proviso in the second section of the bankrupt law.

2. Whether, admitting, that as between the mortgagor and mortgagee, the stipulations of the contract might be a good and sufficient authority for the mortgagee to take possession of, and apply the subsequently acquired machinery, tools and stock, to the payment of the debt, such stipulations in a deed of mortgage do protect such property from other creditors of the mortgagor.

The case was argued at this term by Mr. Preble, for the assignee, and by Mr. Fox, for the respondent.

Mr. Preble, after citing and relying upon Goodenow v. Dunn, decided by the supreme court of Maine, and not then reported (since reported in 21 Me. 86), and upon Winslow v. Merchants' Ins. Co., decided by the supreme court of Massachusetts, and not then reported (since reported in 4 Metc. 306), but of both of which manuscript copies were produced, referred to the cases of Sumner v. Hamlet, 12 Pick. 76, and Macomber v. Parker, 14 Pick. 497, and Leslie v. Guthrie, 1 Bing. N. C. 697; and contended, that they were all distinguishable from the present case. In Sumner v. Hamlet, the goods were in esse, and were selected and set apart, as security for the creditor. In Macomber v. Parker, the lessees, the creditors, were in possession of the brickyard, where the bricks were made, and held by them as security for advances made to their debtor, who was employed to make and sell the bricks upon certain terms, and to account for the proceeds to the creditors. In Leslie v. Guthrie, the assignment was of the freight for a then contemplated voyage of the ship, and was in the course of being earned. But it was clear, that the freight of a ship could not be permanently and indefinitely separated from the ship itself. Robinson v. Macdonnell, 5 Maule & S. 228. The present case is different from all these cases. Here the mortgage is not only of property now in esse, but of future property, which should come into the factory for four years, and the present and future stock purchased for the factory,

within the same period. Yet the mortgagors were to hold and enjoy all the mortgaged premises, and to take the rents and profits thereof, present and future, for their own use and benefit, until there should be a breach of the condition. This gave the mortgagors a complete power and dominion over the whole mortgaged property, and is inconsistent with the assumed rights of the mortgagee, and cannot, in point of law, be valid. How can the mortgagee have a right to the manufactured stock, when the mortgagors have full right to sell it, from time to time, for their own use? Even if stipulations of this sort were valid between the parties, they could not be binding as to creditors, and certainly not in bankruptcy against the assignee. It would be against the policy of the bankrupt act to give effect to such transactions. The mortgage may be good as to the machinery and stock, existing at the time of its execution, but not as to future stock or future machinery.

Mr. Fox, for respondent, argued, that the assignment was valid throughout.

STORY, Circuit Justice. Two questions are presented for the consideration of the court. (1). Whether the present mortgage created a valid lien, in favor of the mortgagee, upon the machinery, tools, and stock in trade, acquired by the mortgagors, and put into the factory after the execution of the mortgage, within the true intent and meaning of the proviso in the second section of the bankrupt act of 1841, c. 9. (2). Whether, admitting the stipulations of the mortgage might, as against the mortgagor, be a good and sufficient authority to the mortgagee to take possession of, and apply the subsequently acquired machinery, tools, and stock, to the payment of the debt due to him, the mortgage is good, so as to protect the property against the claims of the other creditors of the bankrupts.

The proviso of the bankrupt act, above alluded to, is in the following words: "And provided, also, that nothing in this act contained, shall be construed to annul, destroy or impair any lawful rights of married women, or any liens, mortgages or other securities on property, real or personal, which may be valid by the laws of the states respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act." I am not aware, that the present mortgage has been contended to be inconsistent with any thing contained in any section of the act. It was executed long before the bankrupt act was in existence; and there is no pretence to say, that it is designedly fraudulent, or that the mortgagee has waived any of his rights under the mortgage.

The present is a mortgage of personal property, and has been duly recorded according to the act of 1839, c. 390, of the state of Maine, (which is substantially in the same language as the act of Massachusetts on the same subject,) and no objection arises on this head. The question, therefore, in effect, resolves itself into this, whether the mortgage, quoad future machinery, tools, and stock in trade, is a valid mortgage or lien, by the laws of the state of Maine, as between the parties themselves, and also as between the mortgagee and the creditors of the mortgagors. If it be valid, either at law or in equity, (it is wholly immaterial which,) then the decision must be in favor of the respondent; otherwise, it must be in favor of the assignee.

It is material here to state, that the present is not a controversy between a first and second mortgagee, as to property acquired and in esse after the execution of the first mortgage, and before the time of the execution of the second mortgage, both the mortgagees being bona fide purchasers for a valuable consideration, and the second mortgagee having no notice of the prior encumbrance. That might, at law, present a very different question, and is precisely that which is understood to have been decided in the case of Winslow v. Merchants' Ins. Co. in Massachusetts. Neither is this a controversy between a mortgagee of a thing in building (as, for example, a ship in building) before it is completed, and a subsequent attaching creditor, or a subsequent purchaser, after it is completed, which seems to have been the important point in Goodenow v. Dunn, and Bonsey v. Amee, 8 Pick. 236, and which might, also, at law, admit of very different considerations. The present is a question between the assignee of a bankrupt, acting for the benefit of all the creditors, and the mortgagee, claiming title under his mortgage; and it arises upon a petition, partaking of the character of a summary proceeding in equity, and not in a suit at the common law, or governed by its principles. Now, it is most material to bear in mind, under this aspect of the case, that it is a well-established doctrine, that (except in cases of fraud) assignees in bankruptcy take only such rights and interests as the bankrupt himself had, and could himself claim and assert at the time of his bankruptcy; and, consequently, they are affected with all the equities, which would affect the bankrupt himself, if he were asserting those rights and interests. This was expressly laid down by Lord Hardwicke in Brown v. Heathcote, 1 Atk. 160, 162, where he said: "The ground, that the court go upon, is this, that assignees of bankrupts, though they are trustees for the creditors, yet stand in the place of the bankrupt, and they can take in no better manner than he could. Therefore, assignments of choses in action for a valuable consideration, have been held good against such assignees." The same doctrine was recognised by his lordship, in Jewson v. Moulson, 2 Atk. 417, 420. Sir William Grant (M. R.), in Mitford v. Mitford, 9 Ves. 87, 100, said:

"I have always understood the assignments from the commissioners, like any other assignment by operation of law, passed his (the bankrupt's) rights, precisely in the same plight and condition as he possessed them. Even where a complete title vests in them, and there is no notice of any equity affecting it, they take subject to whatever equity the bankrupt was liable to. This shows, that they are not considered purchasers for a valuable consideration, in the proper sense of the words. Indeed, a distinction has been constantly taken between them and a particular assignee for a valuable consideration; and the former are placed in the same class as voluntary assignees and personal representatives." The same doctrine was held by Lord Thurlow in Worrall v. Marlar, reported in Mr. Coxe's note to 1 P. Wms. 459. It has ever since been firmly adhered to (see Parker v. Muggridge [Case No. 10,-743]; 1 Cooke, Bankr. Law, 4th Ed., 1799, pp. 267–270, c. 7, § 2; 1 Deac. Bankr., Ed. 1827, pp. 320, 321, c. 10, § 3; 2 Story, Eq. Jur. §§ 1229, 1411), and has been fully recognized at law, in cases of bankruptcy (Lord Chief Justice Willes, in Scott v. Surman, Willes, 402, and the reporter's note; Gladstone v. Hadwen, 1 Maule & S. 517, 526; Com. Dig. "Bankrupt," D, 19; Leslie v. Guthrie, 1 Bing. N. C. 697; Carvalho v. Burn, 4 Barn. & Adol. 382, 393; Meyer v. Sharpe, 5 Taunt. 74; Simond v. Hibbert, 1 Russ. & M. 719).

It may be admitted to be true, what, indeed, seems to be the result of the authorities cited at the bar, as well as of others equally entitled to respect, that to make a grant or assignment valid at law, the thing, which is the subject of it, must have an existence, actual or potential, at the time of such grant or assignment; and that a mere possibility is not assignable (Wood & Foster's Case, 1 Leon. 42; Grantham v. Hawley, Hob. 132; Robinson v. Macdonnell, 5 Maule & S. 228; Com. Dig. "Assignment," c. 3; Id. "Grant," D); although, perhaps, the doctrine may require some qualifications under special circumstances, as for example, in cases of the assignment of freight in the course of earning at the time of the assignment, as is shown in the case of Leslie v. Guthrie, 1 Bing. N. C. 697, 708, 709. But this admission will carry us but a very little way in the present case. For here the true question is, not whether the assignment of the property to be acquired in futuro, is good at law, but whether it is good in equity; for if it be, then, independently of any fraud (which is not pretended), as the assignee can take only what the bankrupt had a title to, subject to all equities, it follows, as a matter of course, that the petitioner (the assignee) has no claim, on which he can found himself for relief under his petition. So that the question is, in reality, narrowed down to the mere consideration of this, whether the present mortgage as to the future machinery,

tools, and stock in trade, to be put into the factory (for there is no controversy as to those in esse at the time of the assignment), is valid or not against the mortgagor.

Upon the best consideration, which I am able to give the subject, I think it is good and valid. Courts of equity do not, like courts of law, confine themselves to the giving of effect to assignments of rights and interests, which are absolutely fixed and in esse. On the contrary, they support assignments, not only of choses in action, but of contingent interests and expectancies, and also of things, which have no present actual or potential existence, but rest in mere possibility only. In respect to the latter, it is true, that the assignment can have no positive operation to transfer, in presenti, property in things not in esse; but it operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come in esse; and it may be enforced as such a contract in rem, in equity. Lord Hardwicke, in Wright v. Wright, 1 Ves. Sr. 409, 411, expressly recognised this doctrine; and said, that an assignment of a contingent interest or possibility of an inheritance was equally allowable with an assignment of a possibility of a personal thing or chattel real. And he added: "An assignment always operates by way of agreement or contract, amounting in the consideration of this court, to this, that one agrees with another to transfer, and make good that right or interest, which is made good here by way of agreement." In the very case, then before him, he admitted, that the assignor had no immediate claim or demand, but a mere possibility in the property assigned, and that it was well assigned by the word "claim," which well described it, in presenti and in futuro. He also relied on the case of Beckley v. Newland, 2 P. Wms. 182, which (he said) was an agreement on marriage to settle all such lands as came to the party by descent or otherwise from his father; and it was carried into effect by the court, notwithstanding an expectancy of an heir at law is less than a possibility;[2] and Hobson v. Trevor, Id. 191, was fully to the same effect. In Carleton v. Leighton, 3 Mer. 667, Lord Eldon is said to have held, that the expectancy of an heir, presumptive or apparent, was not an interest or possibility, nor was capable of being made the subject of assignment or contract. But there is some reason to doubt the accuracy of the language as to assignment or contract; for he is reported immediately to have added, that the cases cited

---

[2] The case of Beckley v. Newland, 2 P. Wms. 182, was not exactly as stated by Lord Hardwicke. But it was an agreement between two survivors, who had married two sisters, to divide equally between them whatever should be left to them by the father of their wives. But the principle was the same. The case of Hobson v. Trevor, Id. 191, was that probably in Lord Hardwicke's mind. See, also, 2 Story, Eq. Jur. § 1040b, and note.

(referring to the cases of Beckley v. Newland, and Hobson v. Trevor,) were cases of covenant to settle or assign property, which should fall to the covenantor; where the interest, which passed by the covenant, was not an interest in the land, but a right under the contract. This is strictly true, but still the contract was obligatory and sufficient to enforce a specific performance thereof. In the case of Carleton v. Leighton, the sole question was, whether the mere expectancy of an heir, who became bankrupt, passed by the assignment of the commissioners. Lord Eldon held, that it did not; for it was not an interest or even a possibility in the land. It seems clear, that the language of Lord Eldon ought to receive some modification from other language used by him on other occasions. Thus, in Lord Dursley v. Fitzhardinge, 6 Ves. 260, 261, he expressly admitted, that an heir or the next of kin might enter into contracts with respect to their expectations and possibilities, the evidence upon which they might perpetuate; for the law would frame an interest in respect of the contract. Again, In re The Warre, 8 Price, 269, note, in reference to the doctrine of Lord Ellenborough in Robinson v. Macdonnell, 5 Maule & S. 228, Lord Eldon said, that he should find it extremely difficult to say, that the freight of a future voyage might not become the subject of an equitable agreement, as well as a first intended non-existing voyage, if the effect of the assignment were not to separate the freight and earnings forever from the ship itself, but only to separate it for the temporary purpose of securing a debt, and operating only upon that separation of title, till that debt should be paid. Again, in Curtis v. Auber, 1 Jac. & W. 526, 532, where an assignment was made of the present and future earnings of a ship, Lord Eldon supported it, and said: "In one case I think it was held, that although you might assign the wool then growing on the backs of the sheep, you could not assign the future fleeces. See Grantham v. Hawley, Hob. 132. See 1 Madd. Ch. Prac. (2d Ed.) 549. But still it was a good equitable assignment, and rendered the future earnings liable to equity."

The same doctrine was maintained by Mr. Vice-Chancellor Shadwell in Douglas v. Russell, 4 Sim. 524; and his decree was afterwards affirmed by the Lord Chancellor (1 Mylne & K. 488), upon appeal, as to an assignment of freight earned and to be earned on an outward and homeward voyage, then about to be undertaken. And it was acted upon and supported in a like assignment of freight to be earned on a particular voyage in the case of Leslie v. Guthrie, 1 Bing. N. Cas. 697, 708, 709, where the whole subject was argued at large, in a suit of the assignees under a bankruptcy.

But the latest case, and certainly one of the most important and satisfactory in its reasoning, as well as its conclusion, is that of Langton v. Horton, 1 Hare, 549, before Mr.

Vice Chancellor Wigram. There, a deed of assignment by way of mortgage was made of a whale ship and her tackle and appurtenances, and all oil and head matter and other cargo, which might be caught and brought home in the ship on and from her then present voyage; and the question arose between an execution creditor of the assignor, and the assignee, whether the assignment was good as to the future cargo obtained in the voyage after the assignment. The learned vice chancellor decided, that it was. Upon that occasion he said; "Is it true, then, that a subject to be acquired after the date of a contract, cannot, in equity, be claimed by a purchaser for value under that contract? It is impossible to doubt, for some purposes at least, that, by contract, an interest in a thing not in existence at the time of the contract may, in equity, become the property of a purchaser for value. The course to be taken by such purchaser to perfect his title, I do not now advert to; but cases recognising the general proposition are of common occurrence. A tenant, for example, contracts that particular things, which shall be on the property when the term of his occupation expires, shall be the property of the lessor at a certain price, or at a price to be determined in a certain manner. This, in fact, is a contract to sell property not then belonging to the vendor, and a court of equity will enforce such contracts, where they are founded on valuable consideration, and justice requires, that the contract should be specifically performed. The same doctrine is applied in important cases of contracts relating to mines, where the lessee has agreed to leave engines and machinery not annexed to the freehold which shall be on the property at the expiration of the lease, to be paid for at a valuation. The contract applies, in terms, to implements, which shall be there at the time specified; and here neither construction nor decision has confined it to those articles, which were on the property at the time the lease was granted. But it is not necessary, that I should refer to such cases as these; for Lord Eldon, in the case of The Warre, 8 Price, 269, note, and in Curtis v. Auber, 1 Jac. & W. 526, has decided all, that is necessary to dispose of the present argument. Admitting that those cases are not specifically, and in terms, like the principal case, they are not of the less authority for the present purpose; for they remove the difficulty, which has been raised in argument, and decide that non-existing property may be the subject of valid assignment. I will suppose the case of the owner of a ship, which is going out in ballast, proposing to borrow of another party a sum of £5,000 to pay the crew and furnish an outfit; and agreeing that, in consideration of the loan, the homeward cargo should be consigned to the party advancing the money. It cannot reasonably be denied, in the face of the authorities I have just referred to, that a court of equity,

upon a contract so framed, would hold, that the party advancing the money was, as against the owner, entitled to claim the homeward cargo. And if a party may contract for the consignment of a homeward cargo, I cannot see, why he may not contract with the owner of a ship engaged in the South Sea fisheries, that the fruit of the voyage, the whales taken, or the oil obtained, shall be his security for the amount of his advances. I cannot, without going in opposition to many authorities, which have been cited, throw any doubt upon the point, that Birnie, the contracting party, would be bound by the assignment to the plaintiffs."

Now, it seems to me, that this reasoning is exceedingly cogent and striking; and it stands upon grounds entirely satisfactory and conclusive upon the whole subject. What, then, is there to distinguish the case before the court from this reasoning? I confess myself unable to perceive any. It seems to me a clear result of all the authorities, that wherever the parties, by their contract, intended to create a positive lien or charge, either upon real or upon personal property, whether then owned by the assignor or contractor, or not, or if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter, and all persons asserting a claim thereto, under him, either voluntarily, or with notice, or in bankruptcy. See 2 Story, Eq. Jur. § 1231, and the authorities there cited; Cross, Liens, pp. 187, 188, 191, 192, c. 12; Prebble v. Boghurst, 1 Swanst. 309; Needham v. Smith, 4 Russ. 318; Randall v. Willis, 5 Ves. 262, 274, 275; Simond v. Hibbert, 1 Russ. & M. 719.

But, then, it is argued, that here the possession of the property was during the whole period of four years to remain in the mortgagors, and they were to take the rents and profits thereof for their own benefit. Nay, that they had the power to dispose of the stock in trade and the other property by sale, and thus they acquired and retained the full dominion over the same during that period which is inconsistent with the nature and objects of such a mortgage, and against the policy of the law. In short, that as to creditors, it operates a virtual constructive fraud upon their rights. As to the possession and use of the property, and taking the rents and profits thereof, there is nothing in that part of the objection, which will invalidate the mortgage. Nothing is more common in mortgages of real estate than an agreement, that the mortgagor shall take the rents and profits until breach of the condition thereof. And as to chattels, there is as little question, that, where a mortgage or a lien is created on chattels by contract, it is entirely competent for the parties to agree that the possession and use thereof shall be retained by the mortgagor until the breach of the condition, or by the debtor until the creditor shall as-

sert his rights against it as a security for the debt. Even in cases of bankruptcy, a qualified possession of the property by the debtor will not oust the creditor of his rights, as leaving the property in the order and disposition of the debtor under the statute of 21 Jac. I. c. 19, §§ 10, 11, or the statute of 6 Geo. IV. c. 16, § 72. That was expressly held in Crowfoot v. London Dock Co., 2 Cromp. & M. 637, where the possession of the debtor was not exclusive, but was mixed up with that of the creditor, the property (steam engines and other apparatus,) being employed by the debtor in operations, conducted by the company, the possession of the debtor being in pursuance of an arrangement, under which he had a right of user for the purposes of the contract. The case of Hawthorn v. Newcastle & N. S. Ry. Co., reported in Cross, Liens, Append. 408, carried the doctrine a step farther; and decided, that a covenant in a contract to build a bridge for the company, made by the builders, that the company should have a lien upon the machines, implements, and materials of the builders, in or upon the land or grounds, where the bridge was to be built, as a security for the completion of the works, was good in favor of the company, in the case of the bankruptcy of the builders, as a lien, in the nature of a shifting lien, upon such materials, as happened for the time being to lie upon the actual line of the railway, or upon the adjacent land in possession of the company. Under the statute of Maine for the recording of mortgages of personal property (Act 1839, c. 390), where the mortgage is recorded, it is valid, without possession of the property mortgaged being delivered to the mortgagee; and a stipulation, that it shall remain in possession of the mortgagor until breach of the condition, has been upheld as within the true spirit and intendment of the act. Forbes v. Parker, 16 Pick. 462; Rev. St. Me. (Ed. 1841) p. 558, c. 125, § 32; Abbott v. Goodwin, 20 Me. 408.

Then, as to the supposed right of sale, of the stock in trade and other mortgaged property. Admitting it to exist, and to be fairly deducible from the language of the instrument (which certainly is not a strained construction of its apparent object and intent), that right, conceded by the mortgagee, is not inconsistent with the validity of the mortgage; for still the proceeds, or other equivalent property may be substituted for it; and if the parties consent to such an arrangement, there seems no legal objection to it. The case of Abbott v. Goodwin, 20 Me. 408, manifestly proceeds upon this ground. In that case, it was expressly decided, that if the mortgagor should, under a stipulation in the mortgage, giving him that authority, sell the goods mortgaged, and with the proceeds should purchase other goods, the latter goods would represent the first, and be substituted for them; and would be, equally with the first, subject to the lien of the mortgagee. Now, in effect, precisely what the court thus

decided to be the result of law, is provided for by the agreement of the parties in the present mortgage. Macomber v. Parker, 14 Pick. 497, affirms the same doctrine; and both proceed upon principles analogous to those held in Hawthorn v. Newcastle & N. S. Ry. Co., already cited.

This objection, then, falls to the ground, and leaves the case stripped of every other consideration, except the argument, that the mortgage is a virtual fraud upon the other creditors, and is against the policy of the law, and, therefore, cannot be protected against the claims of the other creditors, however it might stand valid as between the parties themselves. And this, in effect, is the remaining point arising upon the second question propounded at the hearing. Now, if the considerations already suggested are sound, they seem to dispose of this part of the controversy. There is no pretense of any fraud, either actual or constructive, intended by the mortgagor and mortgagee. So far as their intentions are concerned, they were upright, and honest, and correct. The mortgage was recorded, and there is no ground to suggest any intentional concealment. The possession of the property by the mortgagors, and the power to use it and dispose of it, was not only consistent with the deed, but was positively avowed and provided for by it. The creditors, therefore, were not allured by any false colors or false credit held out to mislead them. Now, I am not aware of any policy of the law, or of any principle of law, which makes any conveyance of this sort invalid as to creditors, if they have full notice, or may have full notice of it by the exercise of reasonable diligence. Indeed, the law makes the registration of the deed constructive notice of its contents to all persons; since it was required to be registered, and was registered in conformity to law. What ground is there, then, to assert, that the conveyance was against the policy of the law? The phrase itself is somewhat indefinite, and in its actual application here, is difficult to be grasped and comprehended. I profess, that I am not able to perceive any; and, as far as authorities go, they point the other way. Besides, the assignees here stand before the court affected with all the equities of the original debtors; and the creditors here assert their rights through and under the assignee and not by any paramount title.

In every view, therefore, which I am able to take of the case, it seems to me, that the claim of the assignee is not maintainable, and that his petition ought to be dismissed. Under all the circumstances, as the questions are of a somewhat novel character, I incline to think, that the respondents ought not to be allowed their costs; and that the costs of the assignee should be a charge on the bankrupts' estate. But this is a matter for the consideration of the district judge.

I shall, accordingly, direct a certificate to be sent to the district court, answering both the questions adjourned into this court in the affirmative.