## L. COOK & CO. *vs.* JAMES H. CORTHELL.

Although a mortgage of personal property to be subsequently acquired is in itself ineffect-
ual to vest in the mortgagee a legal title to the property, yet if after acquisition by the
mortgagor the mortgagee by delivery from, or by consent of, the mortgagor, takes pos-
session of the property under the mortgage conveyance, the title to the property both in
law and equity vests in the mortgagee without further conveyance or bill of sale.

PLAINTIFFS' petition for a new trial.

Assumpsit. The plaintiffs' writ was served by attaching cer-
tain personal property covered by a mortgage executed by the
defendant to one Darwin Almy. The defendant pleaded, in
abatement, no service of writ, which plea the plaintiff traversed.
Gen. Stat. of R. I. cap. 197, § 4, provides that "Personal estate,
when mortgaged and in the possession of the mortgagor, and
while the same is redeemable at law or in equity, may be at-
tached on mesne process against the mortgagor, in the same
manner as his other personal estate."

The case was submitted to a jury to determine the defend-
ant's title to the mortgaged property, and the jury found "that
at the time of the service of the plaintiffs' writ the property of
the goods and chattels attached by virtue of said writ was not
in the defendant, but in one Darwin Almy, mortgagee." The
charge of the court, and the evidence, are stated in the opinion
of Mr. Justice Potter.

*Nicholas Van Slyck & Lorin M. Cook*, for the plaintiffs.

A mortgage of personal property, such as stock in trade, with
a proviso that such mortgage should cover "All additions or re-
newals of said stock in trade hereafter made from time to time,"
is simply an executory agreement as between the mortgagor and
mortgagee, and cannot defeat the rights of creditors on property
acquired subsequent to the mortgage, even if possession be taken
of such after-acquired property by the mortgagee, under the
mortgage. *Jones* v. *Richardson*, 10 Met. 481; *Barnard* v.
*Eaton*, 2 Cush. 303; *Codman et al.* v. *Freeman*, 3 Cush. 306;
*Edgell* v. *Hart*, 9 N. Y. 217.

*B. N. & S. S. Lapham*, for the defendant, cited *Oliver* v.
*Towne*, 28 Wis. 328; *Morrow* v. *Reed*, 30 Wis. 81; *Rowly* v.
*Rice*, 11 Met. 333.

*March* 3, 1877. DURFEE, C. J. We think it is well settled that, though a conveyance of personal property, to be subsequently acquired, is *per se* ineffectual to transfer the legal title to the grantee, yet, if the grantor delivers the property when acquired to the grantee in fulfilment of the conveyance, or allows him to take possession under the conveyance, the property thereupon passes and vests according to the terms of the conveyance both at law and in equity. There is no need of any new conveyance or bill of sale; for the property, being personal, passes by delivery. And there is no need of the intervention of a court of equity to treat the conveyance as an executory contract and decree its specific performance; for, looking at it in that light, the contract is specifically performed by the parties themselves. The cases which recognize or sustain this view are numerous. The most prominent of them are cited in *Williams* v. *Briggs.* See *ante,* p. 476. There was, therefore, no error in the ruling mainly relied on as a ground for new trial. And in regard to the other rulings alleged to be erroneous, we do not think the petition discloses any sufficient reason for a new trial.

The petition assigns as a final ground that the verdict is against the evidence. The brief makes no point under this head, and no point was made at the hearing. We therefore presume that the petitioner did not expect to have the ground considered.

A majority of the court thinks a new trial should be denied.

POTTER, J., dissenting. This is an action on the case for book account. The writ was served January 2, 1874, by attaching certain goods and the defendant's interest in a lease, and a copy was left with the defendant "for the purpose of notifying him of the pendency of this suit." The goods were advertised and sold under the statute.

The defendant pleaded that the property in the goods was not in the defendant; that the only service was by attachment of said goods, specially setting out a mortgage given by him thereon to one Almy, October 28, 1872; and that on the 1st day of January, 1874, the said Almy took possession thereof and was in possession thereof at the time of said pretended service. The plaintiff traverses.

The mortgage was recorded the day of its date. It conveys

" all and singular the stock in trade and fixtures now in or about the store No. 147 . . . . now occupied by me, such stock in trade consisting of boots and shoes and such other articles as are usually for sale in or about a boot and shoe store, together with all additions or renewals of said stock in trade hereafter made by me from time to time." It contains a provision that possession shall be retained by the mortgagor until default made in the mortgage covenants, unless attachments are levied on the property, and it gives power to sell on default.

It appeared in evidence that all the goods attached, except some worth about $100, were acquired after the date of the mortgage.

On the 31st December, 1873, two days before the attachment, Almy took a witness with him, went to defendant's store, and told him that under the power in the mortgage he took possession to get his debt, and made an entry to that effect in the defendant's cash book, told defendant he wanted him to sell the goods and pay him the money, and appointed him his agent for that purpose. Almy took one key and the defendant kept the other. Almy sold the fixtures and received some money from the defendant for sales. The plaintiff requested the judge to charge, that if Almy took possession under the mortgage of the property subsequently acquired, that all such property so subsequently acquired was subject to attachment. The judge refused so to charge. But the court did charge that if the jury found the mortgage valid, and Almy took possession under the mortgage with the consent of the mortgagor and held possession, the mortgagee's title in the property attached covered by the mortgage would be valid, even if acquired subsequently to the execution of the mortgage, and the attachment would be invalid.

The point is also made that the verdict, which was for the defendant, was against the evidence.

The questions thus raised are the nature of Almy's interest, if any, in the subsequently acquired property; the nature of the delivery of possession necessary in such cases; whether any possession was taken of said property by Almy which should be considered effectual in law; and whether the verdict on that point was or was not against the evidence.

The old doctrine of the common law undoubtedly was that a

person could not mortgage an article not owned by him at the time or not in existence.

But like all the old doctrines, it has been extended from time to time by the courts to do equity in new classes of cases as they arose; so that gradually a mortgage has come to be held to cover additions made to unfinished articles, to complete them, or to repair or to improve their condition; *Jenckes, Adm'r,* v. *Goffe*, 1 R. I. 511; *Harding* v. *Coburn*, 12 Met. 333; the increase of stock described in the mortgage, wool growing or to grow on sheep then owned by the mortgagor; *Forman, &c.* v. *Proctor, &c.* 9 B. Mon. 124; *Southworth* v. *Isham*, 3 Sandf. S. C. 448, 451; crops growing, or sown or to be sown; *Cudworth* v. *Scott*, 41 N. H. 456; *Butt* v. *Ellet*, 19 Wall. 544; what the grantor has potentially though not actually; *Grantham* v. *Hawley*, Hob. 132; goods joined with other goods by intermixture or confusion; *Dunning* v. *Stearns*, 9 Barb. S. C. 630; *Willard* v. *Rice et al.* 11 Met. 493; *Hamilton* v. *Rogers*, 8 Md. 301; additions purchased with the proceeds of the mortgaged property, and to replace it, and articles exchanged for the articles mortgaged; *Abbott* v. *Goodwin*, 20 Me. 408; *Holly* v. *Brown*, 14 Conn. 255; *Oliver* v. *Eaton*, 7 Mich. 108; *Head* v. *Goodwin et al.* 37 Me. 181; but see the subsequent cases in Maine; *Pratt* v. *Chase*, 40 Me. 209; *Chapin* v. *Cram*, 40 Me. 561.

The cases in which such questions generally arise are as to second incumbrancers, attaching creditors, and assignees in bankruptcy.

In England the old common law doctrine was for a long time adhered to even in equity; and after the courts began to change the law, to adapt it to the increase of commercial business and the necessities of modern society, there was for a long time quite a conflict of decisions, and much subtlety evinced in the reasons given for them.

Many of the decisions, even in equity, at first rested on the ground that the equitable interest created by mortgage would not prevail against creditors, unless possession was taken before the attachment.

But at last, in 1862, it was finally established as the doctrine in equity by their highest judicial tribunal, that the equitable title is good without possession against an attachment; although

without possession or notice it would not be good against a *bonâ
fide* purchaser or incumbrancer for value, and this equitable title
is protected by injunction when necessary. *Holroyd* v. *Marshall*,
10 H. L. 191, A. D. 1862, was a thoroughly considered case.   In
that case the agreement provided that the future acquired prop-
erty should be subject to the trusts of the mortgage ; but the
equitable assignees had done nothing to perfect their title, and
execution was levied on the property.   This case was first heard
by Sir John Stuart, V. C. 2 Giff. 382, whose decision was re-
versed by Lord Chan. Campbell, on the ground that there was
no "*Novus actus interveniens,*" to use Lord Bacon's language, no
possession taken.   2 De G., F. & J. 596.   The House of Lords
reversed the decision of Lord Campbell, 10 H. L. 191 ; holding,
after a thorough examination of the cases, that if a person for
consideration agrees to mortgage property of which he is not
the possessor but afterwards becomes possessed, the court would
compel a specific performance, and the beneficial interest would
pass to the mortgagee, and the mortgagor would immediately
become a trustee for the mortgagee, and if the mortgagor had
attempted to remove the new machinery he would be enjoined
from doing it.   See opinions of Westbury, 10 H. L. 209 ; Wens-
leydale, 10 H. L. 213 ; and Chelmsford, 10 H. L. 214.   From
Lord Campbell's opinion, 2 De G., F. & J. 596, 601, it would
seem that the mortgagees at first claimed that they had posses-
sion, but had not been able to prove it to the satisfaction of the
court.

It was admitted at the hearing that the attaching creditor
must take subject to all the equities attached to the property ; 10
H. L. 215 ; and it was held that the equitable title should pre-
vail without any regard to notice.   10 H. L. 227.

Bispham Equity, §§ 165, 358 says, the opinion existed and
prevailed for some time that the equitable right would be incom-
plete without subsequent possession or some equivalent act, and
that Lord Bacon's maxim in regard to legal assignments was also
applicable to equitable assignments ; that Lord Campbell, on this
idea, decided the case of *Holroyd* v. *Marshall*, but the House of
Lords reversed his decision.   The true ground, he says, appears
to be, " that a court of equity enforces such assignments, on the
ground that the assignee is entitled to have immediate specific

performance as soon as the property comes into existence. Neither in equity nor at law can such a contract operate as an immediate alienation, for there is nothing to transfer. But immediately on acquisition the assignor holds it in trust for the assignee, whose title requires no act on his part to protect it, and cannot be disturbed by an execution creditor of the assignor. The assignee, however, has an equitable title from the time of the assignment." This doctrine " is of great practical importance. If the right of the assignee rises, as it is here conceived it does, to the dignity of a title to the specific property," it cannot be defeated by an assignee in bankruptcy, &c., &c.

In this country, while in Massachusetts and in some other states they have held to the common law doctrine, not perhaps always consistently, in other states and in the United States courts the doctrine of the case of *Holroyd* v. *Marshall* has been gradually prevailing in equity.

Here, as in England, many of the decisions at first rested on the ground that the equitable interest created by the mortgage would prevail provided possession was taken before attachment ; but the later decisions, and of courts whose opinions are entitled to most weight, have held the taking of possession unnecessary as against an attaching creditor. In *Mitchell* v. *Winslow et al.* 2 Story, 630, Story, J., after citing with approbation the case of *Langton* v. *Horton*, 1 Hare, 549, as entirely satisfactory and conclusive, states as the clear result of the authorities, " that wherever the parties by their contract intended to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or not, or upon personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice or in bankruptcy." 2 Story, 644. In this case the mortgagee had taken possession, but the decision does not at all rest on that ground.

In *Smithurst* v. *Edmunds*, 14 N. J. Eq. 408, May, 1862, the lessee of a hotel assigned and covenanted to assign to the lessor the furniture in the hotel, and all other which he should purchase and place there, as security, &c., and covenanted that it should remain in the hotel as security, &c. A sheriff levied on the fur-

niture for debt, and an injunction was issued to restrain the sale. The Court of Chancery, after saying that so far as the after-acquired property is concerned the instrument cannot operate as a pledge, because the property was not delivered to the pledgee, nor as a legal mortgage, proceeded to consider whether it could be up-held as an equitable mortgage, and came to the conclusion that it should be. The agreement that the property should be kept on the premises during the term may have had some influence on the decision; but the decision of Judge Story, in *Mitchell* v. *Winslow et al.* 2 Story, 630, is quoted with full approbation, and the court after full argument refused to dissolve the injunction.

Our American courts have had no difficulty in giving this effect to railroad mortgages of after-acquired property.

In *Morrill* v. *Noyes*, 56 Me. 458; 3 Am. Law Reg. N. S. 18, there was a mortgage of a railroad, together with the cars then owned or afterwards to be purchased. Two years afterwards more cars were purchased and a second mortgage made.

In their opinion the court say: " Some of the courts . . . . have attempted to reconcile the cases on the ground that such a mortgage, though void at law, is valid in equity. But this is a loose use of language that tends more to confuse than to recon-cile. If such a mortgage is absolutely void for want of any sub-ject matter to support it, then it should be held so in equity as well as at law." 56 Me. 465. The ordinary syllogism, *Qui non habet ille non dat*, does not settle the question. Many of these mortgages which have been held void at law would have been held void in equity also for uncertainty of description. To be upheld, the contract should refer to some particular property reasonably certain to come into existence, so that the minds of the parties may be in accord as to what it is to be, and the mort-gagor must have a present interest in or concerning it. 56 Me. 465, 466. The court sustain the mortgage, giving for one rea-son among others that the property may be considered as an ap-purtenance of the road necessary for its use, citing *Pierce* v. *Emery*, 32 N. H. 484; *Seymour* v. *Canandaigua & Niagara Falls R. R. Co.* 25 Barb. S. C. 284; *Farmers' Loan & Trust Co.* v. *Hendrickson*, 25 Barb. S. C. 484; *Coe* v. *Hart et als.* 6 Am. Law Reg. 27; *Pennock* v. *Coe*, 23 How. U. S. 117; *Phillips, &c.* v. *Winslow*, 18 B. Mon. 431; and Judge Redfield, in a very long and able

note classifying the cases, approves the decision. 3 Am. Law Reg. N. S. 18, 30. In *Pennock* v. *Coe*, 23 How. U. S. 117, the opinion was delivered by Nelson, J., one of the ablest of the older judges. Judge Nelson, 23 How. U. S. 130, refers to Tindal, C. J., in *Tapfield* v. *Hillman et als.* 6 M. & G. 245, as being of opinion that even at law effect might be given to a mortgage of future acquisitions if the words indicated an intention to include them.

And in the case of *Barnard et al.* v. *Norwich & Worcester R. R. Co.*, in the U. S. Circuit Court, First Circuit, September, 1876, where the mortgage to trustees included railroads to be built under powers already or thereafter to be obtained on specified lines with all engines, machinery, &c., then owned or thereafter acquired, Clifford and Lowell, JJ., relying on *Pennock* v. *Coe*, 23 How. U. S. 117, and *Mitchell* v. *Winslow et als.* 2 Story, 630, held that the rules established by those cases were sound and supported by other decisions; and held that the contract attached in equity as a lien or charge on the property as soon as acquired, so that it was good in this case against the assignees in bankruptcy.

In the case of *Brett* v. *Carter*,[1] in the U. S. District Court, Mass. District, 1875, Lowell, J., held a mortgage of after-acquired property valid against the assignee in bankruptcy; 3 Central Law Journ. 286 ; and citing numerous cases, remarks : " It is true that many of the late cases have arisen upon mortgages given by railroad companies, and some few judges have founded a distinction upon that circumstance. But there is no difference in principle between a mortgage by such a corporation of its rolling stock not yet *in esse* and that by a trader of his future stock in trade in a particular shop, and none can be successfully maintained." From their magnitude, attention has been called to the great injustice that would be done in displacing the first mortgage in favor either of general creditors or even of subsequent mortgagees. But the injustice exists in all such cases in a less degree.

The case of *Leland et al* v. *Collyer et al.*, Supreme Court of Michigan, reported in the Central Law Jour., October, 1876, was a suit in trover, where the defendants justified under a

---

[1] 2 Lowell's Decis. 458.

chattel mortgage which allowed the mortgagor to sell the goods and with the proceeds buy other goods, and included all the stock he then had, or might from time to time have in trade, giving to the mortgagee a right to enter, &c., in case, &c. The court, consisting of some of the ablest judges in the country, observe that trusts of personal property are of every day occurrence, where the fund is constantly changing, and is still held subject to the trust: for example partnerships; and hold that this changing stock of goods is like a trust fund which a court will pursue into reinvestment against purchasers with notice when it can be identified, and that subsequent purchasers with notice could be held trustees.

The mortgagor in this case had sold out his stock to the plaintiffs, specifying it to be subject to a chattel mortgage, but not naming the mortgagee, and the defendants seized and sold under their mortgage.

We have thus the weight always due to the decisions of the United States Supreme Court, with the separate opinions of Story, McLean, Clifford, Lowell, and Cooley, &c., in favor of the doctrine as I have stated it.

The provisions of the mortgages that have come before the courts are various.

Instruments containing a power to seize, but without any words of transfer, have been held not to give any rights in the property before seizure; *Holmes* v. *Hall*, 8 Mich. 66; *Dalton* v. *Laudahn*, 27 Mich. 529; and in *Reeve* v. *Whitmore*, 4 De G., J. & S. 1, Lord Chancellor Westbury held that a mortgage of existing chattels, with license to the mortgagee to enter and seize after-acquired chattels, does not give the latter any present equitable interest. It would have done so if it could be implied from the instrument that he should have a security attaching immediately to the future acquired chattels; but a mere power to seize is very different from an interest, and no interest will arise until the power is exercised. And it may be implied from the Lord Chancellor's language that if the contract could be construed to convey a present interest, the power to seize would be unnecessary.

Some cases, however, hold that the power to take possession might be implied as necessary to carry out the contract.

It will be observed that in some of the cases, *Langton* v. *Horton*, 1 Hare, 549, possession had been taken of the property subject to the equitable charge, but that in other cases there was no possession taken before the attachment. In *Mitchell* v. *Winslow et al.* 2 Story, 630, Story, J., decides the case without any reference to that fact. In *Abbot* v. *Stratten*, 9 Irish Ch. 233 ; also in 3 J. & L. 603, before Lord Chancellor Sugden of Ireland, and in *Whitworth* v. *Gaugain*, 3 Hare, 416, before Wigram, V. C., affirmed on appeal by Lord Chancellor Lyndhurst, 1 Ph. 728, it was held that possession was not essential ; and in *Holroyd* v. *Marshall*, 10 H. L. 191, it was held by the House of Lords that as between the equitable charge and a judgment creditor neither possession nor notice was essential.

It is difficult to see how taking possession can have any relation back to validate a void instrument. If such a mortgage is, as common law judges have held, void, the courts of Massachusetts have been consistent in holding, *Jones* v. *Richardson*, 10 Met. 481, that even a taking possession to foreclose was of no effect ; and that if it was to be construed as an agreement to mortgage, then, *Codman* v. *Freeman*, 3 Cush. 306, it could have no effect on the property until the new mortgage was given. Whereas, if, as the later cases hold, the mortgage of after-acquired property is to be construed as creating an equitable interest in it as soon as acquired, the interest of the legal owner, while the property was still in his possession, might be attached subject to this equity ; while the court would enjoin a sale if it would cause a sacrifice of the property or defeat the object of the contract. *Pennock* v. *Coe*, 23 How. U. S. 117 ; *Smithurst* v. *Edmunds*, 14 N. J. Eq. 408.

It is difficult to see why, if a mortgage on the after-acquired personal property of a railroad is held good, the same principle should not apply to other personal property.

The practical difficulties of the law, as laid down in the later decisions, are no greater than under the law as formerly understood and construed by the common law courts. In case of a mortgage of the smaller stock used in ordinary business, there will be no danger of innocent purchasers suffering ; as, if a power to sell and exchange is not given in or implied from the instrument itself, the consent of the mortgagee would ordinarily be im-

plied from a known course of dealing. And if the mortgagor sells the mortgaged property in the lump, or mortgages for a new and valuable consideration to a person who has no notice, the sale or second mortgage would on all sound principles be good; and if the purchaser or second incumbrancer has notice it ought not to be good.

There are questions of fraud growing out of secret delivery of possession, agencies, &c., &c., which under any law would always arise.

But the main object is attained when a purchaser for value, or second incumbrancer for value and without notice, is protected.

A person who advances money or furnishes materials may require security, and then, if without notice, would be protected in equity. But if he chooses to trust to the personal security or honor of the debtor, then there cannot be said to be any peculiar hardship which should entitle him to preference. See remarks of McLean, in *Pennock* v. *Coe*, 6 Am. Law Reg. 27; 2 Redfield R. R. Cases, 667.

And with the decisions of the highest courts in England, and many of the courts of the highest standing in this country, the weight of authority is most decidedly in favor of the doctrine, that in such a case the equity attaches as soon as the property intended is acquired, and that no possession is necesssary except as against a *bonâ fide* purchaser for value and without notice.

The rule has been laid down, and there is sound sense in it, that the property must be so described as to be identified, either by the sort or locality or both, and the question of intention to defraud would be always open.

In *Belden et al.* v. *Read*, 3 H. & C. 955, A. D. 1865, which was trover by an assignee, A. conveyed all his personal property now or hereafter to be upon or about his dwelling-house, farm, or elsewhere in Great Britain. It was decided partly on the ground that the power to seize given by the mortgage required a previous demand which had not been made, and partly on the ground that the property had never become so specific as to be the subject of specific performance; whereas in *Holroyd* v. *Marshall*, 10 H. L. 191, the property was new machinery brought

into a mill and added to the old machinery, and sufficiently ear-marked to determine it.

And the case of *Mogg et al.* v. *Baker*, 3 M. & W. 195, so often cited, seems to have been decided partly on the ground of the indefiniteness of description, and partly on the ground that it was not a general transfer, but only an agreement to give a mortgage. See 10 H. L. 191, 219.

Another question now arises, What interest did the attaching creditor take in this property so situated ?

That assignees in insolvency and bankruptcy take no more interest in the property than the debtor himself had, and take it subject to all equities, is generally acknowledged. See cases cited in 1 Amer. Lead. Cases, 52.

And it is laid down in the text books, and is fully supported by the authorities, that in regard to personal property an attaching or judgment creditor stands in the same light. He has not the rights of a purchaser for value *bonâ fide* without notice. He takes subject to all equities as well as legal rights. And many cases extend the same doctrine to real estate ; Drake on Attachment, §§ 223, 245, 527, 610 ; 1 Amer. Lead. Cases, 52, and cases cited ; that an equitable mortgage takes precedence of a *bonâ fide* judgment debt is stated by Lord Chancellor Sugden, in *Abbot* v. *Stratten*, 3 J. & L. 603, 614, to have been considered as always settled, until some doubts were thrown upon it by *Whitworth* v. *Gaugain*, Cr. & Ph. 325 ; 1 Ph. 728. But in the same case, in 3 Hare, 416, Wigram, V. C., says that Lord Cottenham never intended to decide contrary to the common doctrine. In that case Wigram, V. C., holds in strong language that the judgment creditor takes only the interest the defendant has and subject to the equitable mortgage ; and on appeal his decision was confirmed by Lord Chancellor Lyndhurst. 1 Ph. 728. And in these cases there was no possession taken nor notice of the equity.

In *Abbot* v. *Stratten*, 3 J. & L. 603, Lord Chancellor Sugden considers the equitable mortgagee as *pro tanto* a purchaser, and sustains his claim against the judgment creditor. No question was made as to possession.

And in the thoroughly considered case of *Holroyd* v. *Marshall*, 10 H. L. 191, 215, 219, it was taken as settled law, both by the

court and counsel, that the judgment creditor took only the right the defendant had; and they overruled Lord Chancellor Campbell's decision, that the equitable right was not complete against creditors until possession taken, thus following and confirming the other cases; and see *Newlands* v. *Paynter*, 4 M. & C. 408; *Lodge* v. *Lyseley*, 4 Sim. 70; *Smithurst* v. *Edmunds*, 14 N. J. Eq. 408, which concedes that the mortgagor's right might be levied on, though in the circumstances of the case the property, which was hotel furniture, was protected by injunction from a sale. Snell's Equity, 67; *Beavan* v. *Earl of Oxford*, 6 De G., M. & G. 507; Willard's Eq. Juris. 442; *Langton* v. *Horton*, 1 Hare, 549, 560; *Brown* v. *Bateman*, L. R. 2 C. P. 272, 281, 283.

*Lanfear* v. *Sumner*, 17 Mass. 110, is sometimes cited as an authority for holding that an attaching creditor is a purchaser for value. It is indeed so stated; but the holding is not necessary to the decision of the case, which was between two creditors as to which should succeed in getting the property. One got an assignment of the property to him, the other attached. In neither case was there any new consideration. The notes of the annotator, Mr. Rand, plainly show that the decision is of very little authority.

See also *Greene & Co.* v. *Haskell et als.* 5 R. I. 447; and as to what makes a man a purchaser for value, &c., *Bay* v. *Coddington et als.* 5 Johns. Ch. 54; *Coddington et al.* v. *Bay*, 20 Johns, Rep. 637, 645, 651.

To apply the principles I have laid down to the present case:

There is here no objection arising from indefiniteness in describing the property or locality.

So far as the property existing at the date of the mortgage is concerned, the mortgage being recorded, it could only be attached in the cases mentioned in the statute.

As to the remainder, if possession was actually taken, then it would be ordinarily protected from an ordinary attachment, either as a pledge, or as an equitable right transmuted into possession.

But if no possession was taken, then, on the authorities I have cited, it would be good as a contract of which specific performance could be enforced, and the defendant would become trustee of the goods as fast as acquired for the benefit of the mortgagee.

In this case, if we are to hold the mortgage invalid in law and only valid in equity, the legal title to the goods would be still in the mortgagor, and attachable. Such an attachment would not be an attachment of an equity, but of the legal title subject to an equity, and this raises the question whether there was any actual possession taken by Almy.

The judge left this question to the jury, and they found that possession had been taken. But it seems to me to be plainly not only against the weight of evidence, but to be entirely unsupported by evidence.

The only evidence on this point was what we have stated. If there was other evidence counsel have not reported it. While there was no attempt at secrecy, there was no publicity, or attempt at publicity. There was no visible change of possession, and nothing whatever to give notice. An officer might reasonably suppose that the property was as liable to attachment as it ever had been. In *In re Blenkhorn*, A. D. 1874, 22 W. R. 907, a creditor took possession of personal property under his mortgage, and put a bailiff there, but otherwise everything went on as before, and apparently the debtor was in possession. It was held that such possession did not avail the creditor, and the property passed to the assignees in bankruptcy; and although decided under the English Bankrupt Law, the principle seems to be a sound one, and of more general application; and see *Latimer* v. *Batson*, 4 B. & C. 652.

The policy of the law, I think, requires, and without any regard to fraudulent intent in the particular case, that the possession should be such as to give notice to those doing business with the parties that a change had been made.

And in this respect the verdict is entirely against the evidence, and should be set aside.

*New trial refused.*