J. S. HUGHES *et al.*, Respondents, v. B. J. MENEFEE *et al.*, Administrators, etc., Appellants.

Kansas City Court of Appeals, February 6, 1888.

1. ADMINISTRATION—INTEREST REPRESENTED BY ADMINISTRATOR IN CASE OF CONTEST.—While, ordinarily, the administrators are the representatives of the deceased, they are also trustees for the creditors of the estate of the deceased; and in the case of a contest between the general creditors, and one asserting a particular claim, as here, they may be said to represent the general creditors. Especially is this so, when the estate is insolvent, as in this case.

2. MORTGAGE—AGREEMENT FOR—NOTICE OF AS AFFECTING CREDITORS. Notice of an unrecorded agreement for a mortgage cannot affect creditors' rights. A regular written mortgage, duly acknowledged but not recorded, is void, though the creditors have actual notice of it; all question of notice is purposely avoided. When possession is not delivered there can be no valid chattel mortgage in this state, as against creditors, unless it be executed, acknowledged, and recorded. And no equitable doctrine can overcome the force of this statute law.

3. ———— DESCRIPTION OF PROPERTY IN—HOW FAR REQUIRED TO BE EXPLICIT — CASE ADJUDGED.—The description of the property should be at least as explicit and definite in an agreement for a mortgage as in the mortgage itself. Where the recording of a mortgage, as under the statute of this state, takes the place of the actual delivery of the mortgaged property, the mortgage to be effectual, must point out the subject-matter of it, so that a third person, by its aid, together with the aid of such inquiries as the instrument itself suggests, may identify the property covered. (*Stonebraker v. Ford*, 81 Mo. 532). *Held*, The agreement in this case is wholly void of any identification, in the description of property, and the agreement is void for uncertainty of description.

APPEAL from Ray Circuit Court, HON. GEORGE W. DUNN, Judge.

*Reversed and bill dismissed.*

The case and facts, as set up in the petition, are stated in the opinion of the court.

J. L. FARRIS and LAVELOCK & LAVELOCK, for the appellants.

I. The appellants insist that respondents' bill should have been dismissed and assign the following errors of the trial court as grounds for reversal. It was immaterial whether the suit was in the name of the private company or the corporation, so far as the testimony of George A. Hughes was concerned. He was one of the parties with whom the contract was made, and on the institution of the suit, and at the time of the trial, he was interested in the subject-matter involved, and was claiming a benefit under the alleged contract. He was, therefore, clearly incompetent as a

witness, A. P. Moore being dead. 1 Greenl. Evid. [13 Ed.] sec. 333; *Butts v. Phelps*, 79 Mo. 302; *Meier v. Thiemann*, 90 Mo. 433; *Meier v. Thieman*, 25 Mo. App. 306.

II. The motion to dismiss, filed by appellants during the trial, should have been sustained, as the evidence showed J. S. Hughes & Company were not the real parties in interest. Rev. Stat., sec. 3462; *Williams v. Whitlock*, 14 Mo. 560.

III. The petition filed by the banking house of J. S. Hughes & Company, was an abandonment of the original suit, and the institution of another by an entirely different party. This proceeding was unauthorized.

IV. The petition does not state facts sufficient to entitle respondents to equitable relief. (*a*) A parol agreement to make a mortgage will not give any title or lien in equity. 4 Kent's Com. [12 Ed.] 151. (*b*) A court of equity cannot dispense with regulations prescribed by statute, and permit that which the statute requires shall be in writing, acknowledged, and recorded, to be shown by parol, for such a doctrine would defeat the policy of legislative enactments. 1 Story's Eq. Jur. [12 Ed.] secs. 96, 170, 177; *Houx v. County of Bates*, 61 Mo. 393-4; *Long v. Hewett*, 44 Iowa, 363. (*c*) The respondents had no mortgage; they never were in possession of the property claimed; and their action cannot be sustained against the administrators and creditors of the Moore estate. Rev. Stat., sec. 2503; *Frame v. Thomas*, 86 Mo. 80; *Moser v. Claes*, 23 Mo. App. 420. (*d*) The creditors contesting respondents' claim, appeared by their attorney, besides, "the administrators are deemed full representatives of creditors of estates committed to their care." *Kennerly v. Shepley*, 15 Mo. 640. (*e*) The demands of respondents had been allowed, classified, and payments made thereon, and a court of equity could not disregard such classification. *Titterington v. Hooker*, 58 Mo. 596.

V. The decree is not responsive to the issues made by the pleadings. The petition did not seek to reach anything but the proceeds from the sale of stock on which plaintiffs claimed to have a lien. The general prayer only entitled plaintiffs to relief consistent with their petition. *Wilkins v. Wilkins*, 1 Johns. Ch. 111; *McNair v. Biddle*, 8 Mo. 257; *Newham v. Kenton*, 70 Mo. 382; *Muenks v. Bunch*, 90 Mo. 500.

VI. There was no demand made for the property. The probate court declined to order the proceeds paid to plaintiff. The administrators could not be expected to turn over this money without any protection whatever. The respondents stood by, with the full knowledge of all that was done, without taking a single step to reach the property or the proceeds, except to present their claims to the probate court. Was this no waiver?

VII. The lips of Moore have been sealed by death. There was no evidence of the agreement except that of interested parties, which defendants claim to be incompetent. The claim being based on a mortgage, which neither existed in fact or in law, nor in equity, the approval of the decree rendered would be clearly unjust to other creditors of the Moore estate.

C. T. GARNER & SON, for the respondents.

I. The allowance of the claim in the probate court was a proceeding at law, purely and wholly statutory, cumulative in its character, and intended to reach other assets of the estate, or its *pro-rata* share, according to the classification, and did not in any manner affect the remedy of respondents to proceed in equity, to enforce their equitable right and lien upon and against specific property as securities for the payment of a specific indebtedness. The probate court had no equitable jurisdiction, was without authority or power to enforce an equitable lien, and any order made by it would have been a nullity, and so the probate court held and believed the claims were allowed in the ordinary form, and respondents left to their remedial suit in equity to

enforce the contract and lien. Respondents are not
precluded from maintaining this suit, or in any manner
affected by said allowance; the proposition is too plain
to admit of argument, is not debatable, and does not
require the production of authority. A party may
bring the suit in law and fail, and yet recover in equity.
These are principles imbedded in equity and honored
for their age.

II. This is not a contest between creditors or
strangers, but a suit and proceeding in equity to enforce
a contract and lien between the parties thereto, founded
upon a valuable and *bona-fide* consideration, paid and
received. The deceased Moore was a party to the con-
tract and lien. The appellants are his administrators,
occupy his identical position, and are bound by his
promises and contract. It was the duty of the admin-
istrators, the appellants, upon being notified and obtain-
ing knowledge of the contract and lien, to discharge
said lien and trust, or preserve the property or proceeds
thereof, for the moment they were so notified ( having
converted the property into money) of the contract and
lien they became trustees of the respondents, who were
entitled to the money. The proceeds of the sale of said
stock and corn became in their hands a trust fund for
those who were entitled to it. 2 Story's Equity, secs.
1255, 1258, 1260.

III. At common law a valid mortgage of personalty
may be made without writing. This results from the
established principle that, at common law, a valid sale
or transfer of personal property need not be in writing.
Jones on Chattel Mortgages, p. 2, sec. 2; *Morrow v.
Turner*, 35 Alabama; *Bank v. Jones*, 4 N. Y. 499;
Jones on Chattel Mortgages, sec. 69. A parol agreement
to give a mortgage, upon which money has been
advanced, may be enforced in equity between the parties
and their representatives. Jones on Chat. Mort., secs.
163, 171; *Conchman v. Wright*, 1 Neb. 1; *Glover v.
McGilvey*, 63 Ala. 508. Delivery is not indispensable
between the parties, under a verbal mortgage, any more

than under a formal mortgage in writing. Jones on Chat. Mort. [2 Ed.] 3; *Morrow v. Turner*, 35 Ala. 131.

IV. In equity while a mortgage may not pass the title to the property, it creates in the mortgagee an equitable interest in and lien on the property which can be enforced in equity. The grounds of the doctrine as to after-acquired property is, that although inoperative as a conveyance, it is operative as an executory contract or agreement which attaches to the property when acquired, and equity transfers the beneficial interest to the mortgagee, the mortgageor being regarded as a trustee for the mortgagee, in accordance with the familiar maxim in equity, that "equity considers that done which ought to be done." *Thompson v. Hoerstel*, 10 Mo. App. 290; *Wright v. Bircher*, 72 Mo. 179; *Page v. Gardner*, 20 Mo. 509; *Brown v. Thompson*, 59 Me. 372; Jones on Chat. Mort., sec. 170, p. 170. If the appellants, as administrators, mixed, confused, and intermingled the property mortgaged, or upon which respondents had a lien, or the money proceeds thereof, with the other money and assets of the estate so as to destroy its identity, and so that it cannot be distinguished from other money and assets of said estate, the respondents are not to suffer thereby, but may proceed against the whole assets in the hands of the appellants as such administrators. Jones on Chat. Mort. [2 Ed.] sec. 481; *Fuller v. Page*, 26 Ill.; *Simmons v. Jenkins*, 76 Ill. 479.

V. The doctrine of equitable mortgages or liens, arising from agreements or implied from a deposit of title papers, is one of the creations of courts of equity. And the established doctrine is, that an agreement for a mortgage has, in equity, a specific lien, and that the mortgagees are entitled to a preference and priority over other creditors who have no lien. 32 Cal. 375; 1 Hill on Mortgages, 648; *McQuee v. Peay*, 58 Mo. 58; Adams Equity, p. 123, and note. The doctrine has long been settled that in addition to the actual conditional conveyance of land which constitutes a legal mortgage, courts of equity recognize and enforce other liens arising

from the implied agreement of the parties, or the justice of the case. These are termed equitable mortgages or liens, and are based on agreements to give a mortgage, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular ' debt, will create a mortgage in equity, or a specific lien on property. 1 Hill. on Mortgages, [4 Ed.] 468 ; *Raccouillett v. Sausevin*, 32 Cal. 375 ; *McQuee v. Peay*, 58 Mo. 58. The Supreme Court of Missouri, in the case of *McClurg v. Phillips*, 49 Mo. 315, held, in relation to real estate, that a mortgage, irregularly and incompletely executed on account of the omission of material requisites necessary to a good legal instrument, created an equitable mortgage or lien in equity for the benefit of the creditor, and maintained the distinction between a statutory mortgage and an equitable mortgage, or lien ; and the power of courts of equity over equitable mortgages and equitable liens and charges on property to secure specific debts. And the same decision holds that the jurisdiction of courts of equity over suits in equity to enforce equitable mortgages, liens, charges, and trusts, on specific property to secure specific debts is sustained in Missouri.

VI. There is no law of limitations affecting respondents' right to enforce the contract and lien claimed by them and obtain the relief sought. A valid lien in equity is a right to the property or proceeds thereof ; such liens are recognized and enforced in courts of equity. The theory of appellants is the same taken in the trial court—same line of argument and authorities reproduced. They take the erroneous position that a lien on personal property can only be acquired by a written conveyance conforming in all respects to our statute, that only a statutory mortgage can confer a lien. They fail to recognize that there are two classes of mortgages, legal and equitable, and two classes of liens, legal and equitable. The one class cognizable in courts of law, and the other enforced in courts of equity. The distinctive difference in these classes is recognized

by courts of equity, by all elementary writers, and in adjudicated cases. Equitable liens and mortgages are peculiarly the subjects of courts of equity, while the foreclosures of legal mortgages in statutory form are foreclosed in courts of law. The position that a parol contract and lien for money, loaned to be invested in contemplated personal property, is sustained by the authorities, by reason, and the plainest principles of equity.

VII. Respondents' lien was not only upon the property purchased, but upon the proceeds when sold. The contract provided that the money for which the stock was sold was to be paid them in payment of their loan by express contract. The lien was created on the stock and money when sold. By the providential and unexpected death of the deceased, Moore, the contract was not carried out, and the respondents have consequently been compelled to resort to a court of equity to have performed a contract and lien that Moore would have done but for his death. The lien, loan of the money, the purchase of the property, are constituents of the contract, and part of the same contract, and are so nearly and directly connected as to become parts of the same transaction. The very decision in *France v. Thomas*, 86 Mo. 80, cited by appellants, asserts that, "A mortgage of chattels not *in esse*, or owned by the mortgagee at the execution of the mortgage, will not pass the legal title to after-acquired property, and the mortgagee to render his lien effectual must assert it in a court of equity." This decision by Judge Henry is against the appellants, and sustains the position of respondents, and clearly recognizes equitable liens and their enforcement in courts of equity. The Supreme Court, in the cases of *Wright v. Beecher*, 72 Mo. 179; *Rutherford v. Stewart*, 79 Mo. 216, are in line with *France v. Thomas*, 86 Mo. 84; and sustains the respondents' position in the suit.

VIII. The administrators have not made final settlement. There is valuable real estate, also other assets

not disposed of, nor administered upon. The rental of the real estate has proven, and is yet, a source of income to the estate. The proven and admitted value of the real estate is twelve thousand dollars, which is a low valuation, so that the administrators have ample property and assets to pay the amount specified in the decree of the trial court, and in equity and good conscience should be so applied, for the money to which respondents were entitled has been erroneously applied to other creditors, and upon the well-known principles of subrogation and substitution, in equity, it can be ordered and decreed that the administrators pay this lien out of the assets not disposed of or applied.

IX. Hughes was a competent witness. His being a stockholder in an incorporated bank, did not render him incompetent as a witness in the case. He was not a member of the firm of J. S. Hughes & Company. The banking house succeeded to all the assets of the firm of J. S. Hughes & Company, and as such became the owner of the indebtedness due said firm by Moore, the deceased.

ELLISON, J.—This is a bill in equity seeking to enforce an agreement for a chattel mortgage, alleged to have been made with defendants' intestate. The bill, among other things, states "that, prior to the death of said A. P. Moore, deceased, in February, 1883, said deceased applied to the firm of J. S. Hughes & Company, then bankers in Richmond, Missouri, for a loan of about two thousand dollars ($2,000) to purchase cattle and hogs, and the corn to feed and fatten them for market; that thereupon a contract was made between said deceased and said firm of J. S. Hughes & Company, by the terms of which contract the said firm of J. S. Hughes & Company agreed to furnish the amount of money aforesaid, at the rate of ten per cent., and the deceased agreed to give them a lien upon the cattle, corn, and hogs purchased, and the proceeds thereof, when sold, and that the said proceeds of the sale of said cattle, corn, and hogs, when sold, were to be paid to said J. S. Hughes &

Company, in payment of said loan and interest thereon, and that said J. S. Hughes & Company were to have said lien from the time said money was loaned and invested in said stock and corn; and that when said purchases were completed the deceased was to make and execute a chattel mortgage, on the cattle, corn, and hogs, to secure the money so loaned; that, under and pursuant to said contract, the said firm of J. S. Hughes & Company loaned the deceased in all, under said contract, and furnished at different times, the sum of nineteen hundred and sixty dollars and seventy-five cents; that all of said money was invested in cattle, corn, and hogs by said deceased; that deceased, a few days after the sum last loaned as aforesaid, died intestate without having executed and delivered the chattel mortgage herein aforesaid, without paying the money so loaned as aforesaid, and without having sold or disposed of the stock and corn purchased by him; that, at the death of said deceased, he (said deceased) had a carload of cattle, eighty-nine head of hogs, and a lot of corn undisposed of, and which had been sold by him; that, soon after his death, his administrators (who are now the appellants in this cause) took possession of the cattle, hogs, and corn herein aforesaid, and sold the same with the other personal property of said deceased." The prayer was, that the administrators pay the money arising from the sale of the stock to plaintiffs. Or if it had been intermingled and confused with other money of the estate, that the court decree its payment out of other money of the estate.

A demurrer to the petition, on the ground that it did not state facts sufficient to constitute a cause of action, was overruled. Defendants then answered. The trial resulted for plaintiffs and defendants appeal.

We are unable to sustain the decree in this cause. By our statute (sec. 2503) no chattel mortgage shall be valid against any other person than the parties thereto, unless possession be delivered or the mortgage be acknowledged and recorded. This is not a contest between the parties to the agreement, for, while the ad-

ministrators are the representatives of the deceased, they are also trustees for the creditors, and the defendants are resisting this action for the benefit of the creditors of the estate. In matters of this nature they may be said to represent the general creditors. *Kennely v. Shepley*, 15 Mo. 640. Administrators are trustees in charge of the property and effects of the deceased, among other things, for the benefit of the creditors of the estate. Money or property in their hands is primarily for the satisfaction of the claims of creditors and they can hold them to a just account of the administration. Aside from these considerations, the petition alleges the estate to be insolvent, and attorneys for the general creditors have appeared in the trial court, and here, to resist this claim. If this judgment is sustained it is at the expense of the general creditors. If the estate was solvent and the rights of third parties did not intervene, a verbal agreement for a mortgage of personal property could be upheld.

The plaintiffs claim that the administrators and the creditors had notice of the agreement, and endeavor to sustain themselves by calling to their aid the equity principle announced in *Mitchell v. Winslow*, 2 Story, 630, where it is said : " It seems to me the clear result of all the authorities, that, whenever the parties, by their contract, intend to create a positive lien or charge, either upon real or personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy." This quotation has been approved by the Supreme Court of this state, in *Wright v. Bricher*, 72 Mo. 179 ; *Rutherford v. Stewart*, 79 Mo. 216, and *France v. Thomas*, 86 Mo. 80 ; but in each of these, there was a regular written mortgage duly acknowledged and recorded. And so, in *Mitchell v. Winslow*, 2 Story, 630, there was a duly executed mortgage, and the question in those cases was simply as to the

right of a mortgageor to mortgage after-acquired property or property not *in esse*. In the Missouri cases, at least, the instruments were statutory mortgages, the contention being whether they covered subsequently acquired property. There may be authorities holding that creditors with notice of an agreement for a mortgage can only enforce their claim subject to the lien created by the agreement, but I apprehend there is no similar statute to ours defining what shall be a valid mortgage, in such jurisdictions.

That notice of an unrecorded agreement for a mortgage cannot affect creditors' rights, is made apparent by a single suggestion; a regular written mortgage, duly acknowledged, but *not* recorded, is void, though the creditors have actual notice of it. *Bryson v. Penix*, 18 Mo. 13; *Wilson v. Milligan*, 75 Mo. 41; *Rawlings v. Bean*, 80 Mo. 614. All question of notice is purposely avoided. *Bevans v. Bolton*, 31 Mo. 437. Surely, a verbal agreement for a mortgage cannot be more potent than the written mortgage itself. When possession is not delivered there can be no valid chattel mortgage in this state, as against creditors, unless it be executed, acknowledged, and recorded. No equitable doctrine can overcome the force of statute law. Otherwise, the conscience of the chancellor would usurp the legislative department of the government and control the policy of the state. Judge Story, in his excellent treatise on the subject of Equity Jurisprudence (sec. 96), makes this very pertinent suggestion: "Whatever formalities are required by statute must be punctually complied with, otherwise, the defect cannot be helped, or, at least, it may not perhaps be helped in equity, for courts of equity cannot dispense with the regulations prescribed by statute."

II. There is another consideration, equally potent in overturning the decree in this cause; there is no sufficient description or ascertainment of the property upon which the mortgage lien was to attach. The de-

scription in the agreement, as declared by the bill, is, that the deceased wanted to engage in feeding and fattening for market "a lot of cattle and hogs," and applied to plaintiff to obtain two thousand dollars with which to purchase them, and the corn to feed and fatten them; that plaintiffs agreed to furnish deceased said sum of money aforesaid at the rate of ten per cent. interest per annum, and deceased, too, agreed to give plaintiffs a chattel mortgage on said cattle, hogs, and corn as soon as purchased. It strikes me as apparent that the description should be, at least, as explicit and definite in an agreement for a mortgage as in the mortgage itself. If this was a written mortgage, containing as the sole description of the property, "A lot of cattle, hogs, and corn, purchased with two thousand dollars, loaned me by the mortgagee," I think, in a contest with creditors, it would be void for uncertainty. The property is not located. The particular purchase or purchases are not identified, the kind of cattle and hogs are not stated or described, and the time of the purchase is not given. While the law is, that parol evidence is admissible in aid of the description of the property in a chattel mortgage, yet the rule, as stated and approved in *Stonebraker v. Ford*, 81 Mo. 532, is, that, "where the recording of a mortgage, as under our statute, takes the place of actual delivery of the mortgaged property," the mortgage, to be effectual, must point out the subject-matter of it, "so that a third person, by its aid, together with the aid of such inquiries as the instrument itself suggests, may identify the property covered." The agreement in this case is wholly void of any identification, and the only inquiries it, or the mortgage itself, if made, would suggest, would be as to whether a given lot of cattle, hogs, and corn was the property purchased with the money borrowed of the mortgagee. Such inquiry is unreasonable. It is inquiring after a matter which, in business affairs, is known to be private and is generally concealed. It could hardly be ascertained ex-

cept through information voluntarily given by the mort·
gageor himself. It is a secret matter, the knowledge of
which is almost necessarily and universally confined to
the mortgageor himself. Unless we admit the right of
the inquiring creditor to compel the mortgageor to
purge himself as to the source of his title and his means
of acquiring the property, I know of no method by which
the information could be obtained. The authorities,
on assignment or mortgage of future-acquired property,
do not contravene what is here said; on the contrary,
so far as my research has gone, they all require the de-
scription to be such that the particular property may be
identified. Such is the English rule. *Belding v. Reed*,
3 H. & C. 955; *Lazarus v. Andrade*, 5 C. P. D. 318.
In the latter case it is said, "*Holroyd v. Marshal*, 10
H. L. C. 193, and *Leatham v. Amor*, 47. L. J. (Q. B.)
581, were relied on by the plaintiff, and *Belding v. Reed*,
3 H. & C. 955, by the defendant. The principle deduci-
ble from these decisions is, that property to be after
acquired, if described so as to be capable of being iden-
tified, may be, not only in equity but also at law, the
subject-matter of a valid assignment for value. The
contract must be one which a court of equity would
specifically enforce." There should be something to
"ear-mark it." In America the rule is the same.
Judge Story, in *Mitchell v. Winslow*, 2 Story, 630, says
the lien must be upon the "particular property de-
scribed. "After-acquired chattels definitely pointed
out, as, for instance, by reference to the ship, mill, or
place into which they are to be brought, may be law-
fully assigned as security." *Brett v. Carter*, 2 Lowell,
458. "The contract must relate to some particular
property described therein." *Morrill v. Noyes*, 56
Maine, 458. In the Missouri cases cited, *supra*, the
property to be afterwards acquired was described in the
mortgages, and the means was therein provided for its
specific identification, as, that it was furniture to be
placed in a hotel; brick to be moulded in a certain
brick-yard, at a certain time, on certain lands. These

considerations lead me to believe the agreement void, as to creditors, for uncertainty of description.

The result is the judgment should be reversed and the bill dismissed. All concur.