AMELIA McCLAIN, Appellant, v. JOHN H. ABSHIRE, *et al.*, Respondents.

Kansas City Court of Appeals, December 6, 1897.

1. **Married Women**: SEPARATE PROPERTY: CONFLICT OF LAWS. If the title to the property of a married woman residing in another state becomes fixed in the husband under the laws of that state, the latter's title will not be affected by removal into this state, notwithstanding the acts which gave him the title in the foreign state would not have been sufficient·in this state.

2. ——: ——: ——. Though the married woman's title was vested in her in the foreign state, if she retains such title until her removal into this state, it would then be governed by the laws of this state concerning the property of married women.

3. ——: ESTOPPEL: KNOWLEDGE. Before a married woman can be estopped to claim her separate property against a lien attempted to be created by her husband, she must know of his creating such lien and act in such manner as to induce the other party to rely upon the lien; and in applying the principles of estoppel, the peculiar relationship existing between husband and wife will be considered by the courts. In this case there was a failure to show knowledge on the part of the wife.

4. **Landlord and Tenant**: LEASE: CERTAINTY OF TERM. To make a lease valid for a greater term than an estate at will, it must be for a certain term with a definite commencement and ending, but the beginning may be when the house is suitable to be occupied.

5. **Lien**: PERSONAL PROPERTY: AFTER ACQUIRED. A valid lien may be retained on future acquired property.

6. ——:·—— —: DESCRIPTION. A description of personal property to sustain a lien thereon must be definite and capable of being rendered certain, but a description of all their property situated on said premises is believed to be sufficient.

7. **Appellate Practice:** FORMER APPEAL. Although this case was tried in accordance with the opinion reported in 63 Mo. App. 333, it is reversed for a new trial under the interpretation of the rule contained in *Riley v. Bond,* 116 Mo. 169, and other cases.

*Appeal from the Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

*L. H. Waters* and *Oscar L. Smith* for appellant.

(1) The defendants ought not to be heard on that part of their answer setting up estoppel, because the facts stated do not constitute an estoppel. The following elements are wanting: That plaintiff had knowledge of the lien before, or at the time it was given; that plaintiff intended to defraud these defendants by her silence or acts; that she permitted her husband to claim, represent or hold himself out as the owner at the time, or before the lease was given; that the defendants were induced to execute the lease by what the plaintiff did or said; that the defendants relied or acted on anything plaintiff did or said. *Weise v. Moore,* 22 Mo. App. 530; *Miller v. Anderson,* 19 Mo. App. 71; *Blodgett v. Perry,* 97 Mo. 263; *McPeak v. R'y,* 128 Mo. 617; *Lilly v. Menke,* 126 Mo. 212. (2) The property in controversy was the separate property of the wife and was not subject to be taken for the husband's debts. Kansas Statute 1895, chap. 62, sec. 1; Missouri Statute 1889, sec. 6869. (3) Silence, in the absence of knowledge of the facts, will not work an estoppel. *Scrutchfield v. Sauter,* 119 Mo. 615; *Blodgett v. Perry,* 97 Mo. 263; Harris' Contracts of Married Women, sec. 530; *Bank v. Lee,* 13 Pet. 118; *Drake v. Glover,* 30 Ala. 382; *County v. Sanderford,* 37 Ala. 91; *Acton v. Dooley,* 74 Mo. 63. (4) The evidence did not

support the finding of estoppel. There was no estoppel. *Rosenthal v. Jenkins*, 67 Mo. 295; *Eitelgeorge v. Building Ass'n*, 69 Mo. 52; *Smith v. Roach*, 59 Mo. App. 115; Harris' Contracts of Married Women, secs. 527 and 554. (5) The statements and acts of the husband should not have been admitted to affect the wife's title to this property in particular when she was not present. *State ex rel. v. Bank*, 10 Mo. App. 487; *Hoffman v. Hoffman*, 126 Mo. 486; *Fox v. Windes*, 127 Mo. 502; *Harlan v. Moore*, 132 Mo. 483; *DeBerry v. Wheeler*, 128 Mo. 84. (6) The lease was void for uncertainty. The date fixes the commencement of the term, if no other time is mentioned. It was not shown that the rooms of the second floor were ever made ready for occupation. Martindales' Law of Conveyancing, sec. 324.

*Frank Sheetz* and *Lewis A. Chapman* for respondents.

(1) Where a married woman intends to retain property as her sole and separate estate, free from her husband, she should adopt some plan by which the public will have notice that the property belongs to her, and not to her husband. A married woman who allows her husband to use her capital as his own, invest and reinvest it in his own name, and obtain credit on the faith of being the owner thereof, will not be allowed to interpose her claim to the acquired property to the injury of creditors. 2 Herman on Estoppel, sec. 1111, p. 1249; *Hockett v. Bailey*, 86 Ill. 74; *Bank v. Hamilton*, 34 N. J. Eq. 158; *Sherman v. Elder*, 24 N. Y. 381. Or allows her husband to hold himself out as the owner, as he sees fit, on the faith of which others have acted. 2 Herman on Estoppel, sec. 1111, p. 1249; *Griffin v. Romsdell*, 71 Ind. 440; *Coleman v. Semmes*, 56 Miss. 321; *Leete v. Bank*, 115 Mo. 204.

ELLISON, J.—This is an action of replevin for a lot of household furniture and articles of personal property for the equipment of a photographic gallery, in which the judgment in the circuit court was for defendants. The facts necessary to an understanding of the case are substantially these: Plaintiff is a married woman. Her husband, W. W. McClain, and one Ambrose, leased for five years the second story of a building in Chillicothe for the purpose, principally, of conducting the business of taking photographs. The lease was in writing and reserved a lien on any chattels which the lessees might put in the building. After occupying the premises six or seven months, having paid the monthly rate of rent, McClain quit the possession. At the time of his quitting plaintiff was having the goods in controversy packed preparatory to shipment. The defendants interposed and refused to let the property be taken from the building, claiming the right to hold it under the lien given in the lease to secure the rent for the full term. Whereupon the plaintiff instituted this action, claiming the property to be hers and not her husband's.

Plaintiff and McClain were married in the state of Kansas, where they resided some time before going to Chillicothe. Plaintiff, while living in Kansas, after her marriage, inherited from her father about $6,000. This money was used by her and her husband in purchasing the household goods. That is, they were purchased from time to time by either separately, or when together, as it happened and as occasion made necessary. The property for the gallery was purchased by the husband, in his name, but with plaintiff's money. The evidence seems to fix it that he used the money for household necessities and to run the gallery as he needed it; to use plaintiff's expression, "as one of the

family." This was the status of the property when it was moved into Missouri. The rights of the husband and wife in and to the property were therefore fixed by the laws of Kansas. By reference to the statute of that state, sections 3752, 3753, Revised Statutes 1889, it will be seen that the property relation between husband and wife is not guarded as it is in this state. In this state, section 6869, Revised Statutes 1889, personal property inherited by the wife remains her separate property, and the use, occupancy, care or protection thereof by the husband can not affect her right or title unless she gives her *"express assent" in writing* that he may dispose of it. But the Kansas statute referred to is as follows:

MARRIED women: separate property: conflict of laws.

"The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits or proceeds thereof, and any real, personal, or mixed property which shall come to her by descent, devise, or bequest, or the gift of any person except her husband, shall remain her sole and separate property, notwithstanding her marriage, and not be subject to the disposal of her husband, or liable for his debts."

"A married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property."

Under those sections it is clear that whatever property was bought with plaintiff's money by plaintiff herself or by her husband as her agent remained her property. But if her money, with her consent, was used by her husband in purchasing articles of property (whether for the business of photography or for house-

hold use) for himself with the intent to make them his property, then the property became his and not hers, and he became her debtor for the sum thus gotten of her. And so, whether the property in controversy was hers or his when it was brought into Missouri, depends on which of the foregoing hypotheses is true.

If the first one is true, and the property belonged to plaintiff when brought into this state, then the question presented in the trial court as to her being estopped from asserting her title by her acts in relation to the property presents itself. As before stated, the title to the property as between plaintiff and her husband was fixed in Kansas and is therefore not affected by the provision of our statute in relation to the possession of the husband. Story, Conflict of Laws, secs. 64, 66a, 186; Wharton, Conflict of Laws, sec. 191.

It does not appear whether any of the property in controversy was acquired after the removal of plaintiff and her husband into this state. If it was, then the rights of plaintiff and her husband would be governed by our statute. Wharton, Conflict of Laws, sec. 196; Story, Conflict of Laws, sec. 187.

On the hypothesis aforesaid that the property was hers when they came into this state, we are of the opinion that the evidence fails to show any act on her part of omission or commission which, under the ruling of the supreme court, amounts to an estoppel. The only claim made by defendants in this direction was that plaintiff permitted her husband to use the property as his own, he being enabled thereby to lead these defendants into the belief that it was his, they being thereby induced to make the lease. The things charged against plaintiff were that she knew her husband had rented the building, and that he conducted the business in his own name, and that it was advertised in his name and that she

did not inform anyone that the property was hers. But it was not shown that she knew her husband had given a lien on the property. It was not shown she knew that defendants required him to give a lien on the property, or that they relied upon it as security for rent. The showing was not such as to estop her. *DeBerry v. Wheeler*, 128 Mo. 84; *Alkire Grocery Co. v. Ballenger*, 137 Mo. 369.

It is perhaps true that the cases just cited fail to give the same effect to acts of a married woman as to matters of property between her and her husband that is ordinarily given in construing matters of estoppel where the peculiar relationship does not exist. And we think it may be well said, in support of those cases, that on account of the peculiar relationship existing between husband and wife she should not be held guilty of a failure to speak, or rather she should not be held responsible for a failure to speak, in instances where others would be held culpable if they did not give notice of their rights. And this view is supported by authority. Harris on Contracts of Married Women, secs. 527, 554. I am not unmindful that it is some-times said that as to her separate estate she will be looked upon as *sui juris* and subject to the ordinary rules of estoppel, but it will be noticed that in applying the facts in any given case the courts do have regard to her situation and relation with her husband.

But aside from any consideration of the leniency of the law concerning the conduct of a married woman relating to her property interests, there is no evidence in the cause to justify instructions on the theory of plaintiff's being estopped by her conduct whereby defendants were induced to execute the lease retaining the lien clause. The law is clear that to establish estoppel *in pais* it must be shown the party against whom the estoppel is set up has been guilty of some

unfair conduct which so acted upon and influenced the mind of the party claiming the estoppel as to mislead him to his prejudice unless he be protected by the estoppel. In this case there is not the slightest evidence connecting plaintiff or her acts (whatever they were) with defendants so as to induce them to execute the lease retaining the lien, or to accept her husband as their tenant. So far as the evidence discloses, defendants had never seen plaintiff; they knew nothing of her existence. Any act of hers in permitting her husband to use her money or property in Kansas was wholly unknown to these defendants and any act of hers in Chillicothe must have been long after they were induced to rent the building and retain the lien. For she did not go to Chillicothe until a month or more after the property was rented and the lease executed. More than this, the property itself was not in Chillicothe for several weeks after and had never been seen by defendants. It had never been heard of by them except as is shown by the following testimony of defendant Abshire:

"Q. State what representations he made as to the goods—property, etc., he would bring here and put in the building? A. He told me he had photograph goods, camera, and other things; that he wanted to set up a first-class gallery and would.

"Q. State whether you would have entered into the lease if he hadn't represented that he owned certain property? A. Of course not.

"Q. The understanding was that you were to have a lien on all he put in the gallery—building? A. Yes, sir."

When it is remembered that even that representation was made in the absence of plaintiff and without her knowledge, it will be seen that we did not characterize it too strong when we stated there was

not the slightest evidence upon which to base the claim that plaintiff misled or induced these defendants to alter their position. If the only claim made by defendants was based on estoppel, we would feel it our duty to reverse the judgment outright. But since the question is made as to whether the property did not really belong to plaintiff's husband under the second of the above hypotheses, we will remand the cause that such question may be tried.

2. If, therefore, the second of the above hypotheses is true, that is, that the wife's money was used to buy this property in Kansas for the husband and the property was his, the plaintiff became his creditor and he had a right to prefer her by turning over the goods in controversy and she would hold them until her claim was paid in preference to other creditors, unless such other creditors obtained a valid lien thereon prior to being turned over to plaintiff.

Defendants claim this lien by reason of the lease, which was "for the term of five years beginning on the day when the rooms in said second story are ready for occupation and ending on the day five years thereafter;" and containing the following lien clause: "All of their property situated on said premises, whether subject to legal exemption or not, shall be bound and subject to the payments of said rents and damages, and a lien thereon for the payment of said rent and damages is hereby created."

As the case is to be retried, we deem it proper to construe this lease to the end that we may cover any difficulty likely to arise at another trial. The law is that a lease to be valid for any greater term than an estate at will must be certain as to commencement and duration. Thus if it has a certain period of commencement but is to end when the lessor "is prepared to improve the ground

*——: estoppel: knowledge.*

with new buildings;'' such lease is inoperative for any other purpose than the creation of an estate at will, its duration being uncertain, since it can not be known when the lessor will be prepared to improve the property with new buildings. *Corby v. McSpadden*, 63 Mo. App. 648.

The lease in question might at first glance be taken to be uncertain as to commencement, since it is to begin ''when the rooms are ready for occupation.'' But it will be seen that notwithstanding this, the term of five years is certain and the commencement may be rendered certain. *Corby v. McSpadden, supra; Murray v. Cherrington*, 99 Mass. 229. In the latter case it was said that ''the duration of a lease must be certain; this includes both its commencement and termination.'' But ''it may be conceded that a lease for years may begin 'when a house is suitable to be occupied,' according to the maxim, *Id certum est quod certum reddi potest.*''

3. The property was not in the building when the lease was executed and some of it may not have been owned by the lessees at the date of the execution of the lease. But a valid lien may be retained on future acquired property. *Wright v. Bircher*, 72 Mo. 179; *Hughes v. Menefee*, 29 Mo. App. 192.

LANDLORD and tenant: lease: certainty of term.

4. It will be noticed that the lease does not describe any particular property by name, and in this respect might be thought to be too indefinite to be valid. In this state the description must be definite and capable of being rendered certain. *Hughes v. Menefee, supra*. But it will be seen that the description is of ''*all* of their property *situated on said premises.*'' This we believe to be sufficient. It included *all* personalty belonging to the lessees which was placed in that building. The only

LIEN: personal property: after acquired.

difficulty about fixing upon the particular property here meant to be described would be in determining whether it belonged to the lessees, and for this extrinsic evidence could be heard in aid; for it is such as the instrument itself suggests.

A former appeal of this case to this court will be found reported in 63 Mo. App. 333, and it is suggested that the last trial was in accordance with the opinion on that appeal. But the opinion delivered then, as will be seen by referring to the volume, was based upon the case of *Riley v. Vaughn*, 116 Mo. 169. The meaning of the latter case, if not limited, is at least made to show its true scope by the cases of *DeBerry v. Wheeler* and *Alkire Grocery Co. v. Ballinger, supra.*

——: ——: description.

The result of the foregoing views is that the judgment should be reversed and the cause remanded. All concur.