## FLINN v. CULLINS.

### Opinion delivered April 19, 1920.

1. EVIDENCE—MATTER OF COMMON KNOWLEDGE.—It is matter of common knowledge that the fruits of sowing land in meadow can not be enjoyed in a single year.

2. LANDLORD AND TENANT—LEASE FOR DEFINITE TERM.—A contract whereby a landlord agreed to give a tenant the right to hold a meadow so long as it held good or paid created a tenancy for a term, which can be made definite by the aid of the knowledge of those experienced in such matters.

3. LANDLORD AND TENANT—CONSTRUCTION OF LEASE.—A lease of meadow land, though stipulating that if the land was not all sowed in meadow it was to be cultivated in something else, did not entitle the lessee to leave unsown as much land as he cared and to cultivate it otherwise, and the lessor could have terminated the lease on failure to maintain as meadow all the land except an inconsequential part.

4. LANDLORD AND TENANT—REDUCTION OF MEADOW LAND BY SURRENDER.—Acceptance by a lessor of meadow land of the parts of the land which failed as a meadow from time to time narrowed the lease to such part of the land as was in fact used as a meadow and continued to pay as such.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; reversed.

*Samuel M. Casey,* for appellant.

The contract is plain, definite and unambiguous. It was not a tenancy from year to year but for a definite term and not at will, and the six months' notice required was not given. 65 Ark. 471.

*Earl C. Casey,* for appellees.

The contract was in effect for a lease at will or from year to year and was terminated by proper notice given before this action brought. 16 R. C. L. 606; 34 L. R. A. (N. S.) 1069; 5 Elliott on Cont., par. 4531, 4580. See also 22 Ind. 122; 98 Mass. 503; 5 Bin. (Pa.) 228.

McCULLOCH, C. J. John Cullins was a landowner in Independence County, and on August 15, 1912, entered into the following written contract with appellant for lease to the latter of certain meadow land:

"Jamestown, Ark., August 15, 1912.

"Meadow Contract.

"I, J. S. Cullins, agree to give N. E. Flinn the right to hold and control said meadow as long as the meadow holds good or as long as it will pay. I will be responsible for all damages done on said meadow by stock or anything that is my fault. N. E. Flinn is to cut, rake and shock my part of the hay, then I haul it myself, one-third of the hay is J. S. Cullins' part as rent on said land. There will be about 19 acres and a half of said meadow. In case this land is not all sowed in meadow, it is to be cultivated in something else."

This is an action instituted against appellant by the widow and heirs of Cullins, who died in March, 1918, to recover possession of the land so leased. The case was tried on the following agreed statement of facts:

"In pursuance to said contract N. E. Flinn entered into possession of said lands, bought seed and sowed same in meadow in the fall of the year 1912, and cut the hay therefrom each year, beginning with 1913 and includ-

ing 1917. There was originally about 19 acres to sow, but it did not all come to a stand, and that that was sowed and did produce a stand, gradually died out, and was surrendered back to J. S. Cullins from year to year without objection, until at the death of J. S. Cullins, which occurred in March, 1918, there was only about three acres that the meadow was still good on. In April, 1918, the plaintiffs went on said meadow and cut the hay from the three acres for the year 1918. The defendant brought a suit against the plaintiffs for the value of the hay taken that year, and a trial was had in the Independence Circuit Court, and he recovered judgment against them for the value of his part of the hay for the year 1918, which was $183. This judgment was paid off by plaintiffs and never appealed from, and was rendered on the 8th day of January, 1919."

There was a trial before the court sitting as a jury, which resulted in a judgment in favor of appellees for recovery of possession of the land in suit.

The contention of appellees was, and is, that the contract was one, in effect, for a lease at will or from year to year, which was terminated by proper notice before the commencement of this action. The contention of appellant is, on the other hand, that the contract created a tenancy for a definite term, "as long as the meadow holds good or as long as it will pay."

The writing is couched in crude terms, evidently framed by the parties themselves without the aid of anyone skilled in accurate use of appropriate language, but we are of the opinion that appellant is correct in his interpretation of the contract.

The contract was not one for a tenancy at will or from year to year, for common knowledge of the maturity and use of meadow land leads to the definite conclusion that all the fruits of that method of agriculture can not be enjoyed within the compass of a single year. The parties evidently intended to create a term of more than one year in order to afford the lessee an opportunity to enjoy the fruits of his labor and expenditures. The term

"as long as the meadow holds good or as long as it will pay" is not of itself definite, but it can be made so by aid of the knowledge of those who are experienced in husbandry. It falls within the maxim that "a thing is certain which is capable of being made certain." The lease may be likened to one of familiar type for taking oil or minerals out of the ground "as long as it is profitable." 16 R. C. L., p. 607; 1 Taylor on Landlord & Tenant, sec. 76; *Hammond* v. *Barton,* 93 Wis. 183; *Bacon* v. *Bowdoin,* 22 Pick. 401; *McClain* v. *Abshire,* 72 Mo. App. 390; *Bush-Everette Co.* v. *Vivian Oil Co.,* 128 La. 886.

This contract was meant to be a lease of the whole of the nineteen acres for use as a meadow, and the last part of it providing that the "land not all sowed in meadow" referred to an inconsequential part which by reason of untoward circumstances might not be utilized as meadow. It did not mean that the lessee could leave unsown as much of the land as he cared to, and cultivate it otherwise, and the lessor could have terminated the lease on the failure of the lessee to sow and maintain as a meadow all of the land except a small and inconsequential part. But the lessor did not elect to terminate the lease. On the contrary, he acquiesced in the failure of the lessee to successfully convert all of the land into a meadow, and according to the evidence he accepted a surrender of that portion of the land not used as a meadow. This acceptance by the lessor, from time to time as the area of the meadow diminished, narrowed the lease to such part of the land as was in fact used as a meadow, or, to employ the exact language of the contract, such part as continued to "hold good as a meadow" or to "pay" as a meadow. In other words, when the meadow was reduced to three acres and the lessor accepted a surrender of the remainder, the lease became one covering that area as meadow land. The evidence does not show that that portion of the land had ceased to "hold good as a meadow." It shows, on the contrary, that the land is still profitable as a meadow. That being

true, the court erred in declaring the lease to be terminated.

It is unnecessary to determine the sufficiency of the notice.

Reversed and remanded for a new trial.