McCombs *v.* Guild, Church & Co.

## M. A. McCombs *v.* Guild, Church & Co.

1. JUDGE, SPECIAL. *Appeal. Quære,* whether an appeal lies from the judgment of a special judge, selected by the parties merely because the regular judge was engaged in the dispatch of other business, where the record shows the fact, and that the bill of exceptions and judgment were signed by the special judge.

2. CONTRACT. *Sale of personal property. Possession passes to purchaser and title to remain in seller. Sub-vendee.* A contract for the sale of personal property, by which the possession passes to the purchaser, but the title remains in the seller until the purchase money be paid, is valid, and the contract, although reduced to writing, need not be registered. As between the original vendor and a sub-vendee in such a case, it is a question of title, and neither the payment of the price, nor want of notice of the vendor's right will protect the sub-vendee from the claim of the owner.

3. SAME. *Same. Sub-vendee. Rights of where there is power to convey.* Exceptions to the rule in favor of the sub-vendee may exist where the possession of the purchaser is coupled with the usual *indicia* of title and authority to convey; or with an apparent power to sell superinduced by the acts of the vendor; or, perhaps, where the conditional sale is made with knowledge to a regular dealer in the article.

4. SAME. *Same. Same.* The case falls within the rule, and not the exception, when the plaintiffs, citizens of Boston, Massachusetts, sold a piano to a resident of Memphis, Tennessee, by contract in writing, stipulating for the payment of the price by instalments, that the chattel should remain the property of the plaintiffs until the price was paid, and that the vendors should have the right to take back the piano if the purchaser should fail to pay, or should sell, mortgage or convey the same in any manner without the written consent of the vendors, the proof merely showing that the purchaser brought the piano to Memphis, kept it for sale in a store where he had other pianos, and sold it, without the knowledge of the plaintiffs, to the defendant, who had no notice of the plaintiff's rights, for value.

5. PLEADINGS AND PRACTICE. *Tort may be waived and suit be for value. Limitation.* The owner of personal property may waive the tort in its

McCombs v. Guild, Church & Co.

conversion, and sue in contract for its value, in which case the limitation of the action will be that for causes of action in contract, although the title to the property may, before suit, have become vested in the wrong-doer by lapse of time.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

ESTES & ELLETT for McCombs.

W. STRONG and W. M. RANDOLPH for Guild, ·Church & Co.

COOPER, J., delivered the opinion of the court.

This action was commenced by Guild, Church & Co., against M. A. McCombs, before a justice of the peace by warrant, "in a plea of debt by account." Upon appeal to the circuit court, the regular judge being engaged in the trial of a cause, the parties agreed that the cause might be tried by C. W. Heiskell, an attorney of the court, as special judge. This is the substance of one entry on the minutes. The bill of exceptions says that the parties agree to submit the case to C. W. Heiskell, Esq., "appointed by the court, with the consent of both parties, a special judge," without the intervention of a jury, the judgment to be entered as the judgment of the court, "both parties reserving the right to appeal from the same to the Supreme Court as if the case had been regularly called and tried by the circuit judge." The special judge rendered judgment for the plaintiffs below, and

the defendant appealed in error. The bill of exceptions and the judgment of the court are signed by the special judge.

The first point made is that the judgment is not one from which an appeal can be taken. But no motion was made to dismiss the appeal, and a majority of the court think that the objection comes too late. I have grave doubts of the jurisdiction of the court in such a case.

On September 25, 1875, the plaintiffs, in Boston, sold to C. S. Cooper, of Memphis, Tennessee, a piano at the price of $325, of which $27.12 were paid in cash, and the residue secured by eleven notes of the purchaser for $27.08 each, payable at intervals of a month for the next eleven months, with 7 per cent interest. The contract, which was in writing signed by the purchaser, provided that the piano should remain the property of the plaintiffs until all of the payments were made, with the right on their part, in case of failure to pay, or if the purchaser should "remove the same from the house No. —, or sell, mortgage or convey the same in any manner, without their written consent," to take the piano back. The purchaser brought the piano to Memphis, and kept it "in a sewing machine store for sale, where persons desirous of purchasing pianos examined and tried it; he also kept other pianos there." On October 3, 1875, Cooper, through one L. Schunck, sold the piano to the defendant for $500, which was paid in another piano worth $100, and the residue in cash. The defendant had no knowledge of the contract between

plaintiff and Cooper, but bought and paid for it believing that Schunck and Cooper were the absolute owners. She has had possession of the piano since her purchase. The plaintiffs had no knowledge of the sale to the defendant. They made no demand of the defendant for the piano until March, 1879, when defendant was told by the agent of the plaintiffs that he had the purchase notes for collection, and, as they had not been paid, that Cooper had no title to the piano; that if defendant wished to keep the piano she must pay for it, or, if she preferred to return the piano, he would accept it in payment. The piano is worth $325. The plaintiffs, who reside in Boston, Massachusetts, had permitted Cooper to bring the piano from Boston to Memphis, and had not put the agreement of sale on record, or made any advertisment in Memphis, or otherwise given notice that the title of Cooper was not complete.

It has uniformly been held in this State that a contract for the sale of personal property, by which the possession is delivered to the purchaser but the title retained in the seller until the purchase money be paid, is valid, and if the purchaser dispose of the property before the title is vested in him by the payment of the purchase money, the original owner may follow it into the hands of the third party: *Houston* v. *Dyche*, Meigs, 76: *Gambling* v. *Read*, Meigs, 281; *Price* v. *Jones*, 3 Head, 84; *Holmark* v. *Molin*, 5 Cold., 482. And although the contract of sale be reduced to writing, it need not be registered: *Bradshaw* v. *Thomas*, 7 Yer., 497; *Buson* v. *Dougherty*, 11

McCombs *v.* Guild, Church & Co.

Hum., 50. As between the original vendor and sub-vendee in such a case it is a question of title, and neither payment of the price nor want of notice of the vendor's right will protect the sub-vendee: *Price* v. *Jones,* 3 Head, 85. Taking possession and assuming control of the property as owner, would be a conversion: *Houston* v. *Dyche,* Meigs, 76. Demand of possession and refusal are required only in those cases in which the possession was rightfully acquired: *Merchants National Bank* v. *Trenholm,* 12 Heis., 524.

In *Gambling* v. *Read,* it was said by the court that possession of personal property is only *prima facie* evidence of title, and will not protect the purchaser against the claim of the true owner, except in a few cases provided for in law, where it has been of such a character as is calculated to impose upon creditors and subsequent purchasers. Some of these cases are noticed by the eminent judge who delivered the opinion of the court in *Taylor* v. *Pope,* 5 Cold., 416. They are usually cases in which possession is connected with an apparent power to sell superinduced by the acts of the owner, or by coupling the possession with the usual *indicia* of title with authority to convey, as in the case of certificates of stock with a power of attorney to transfer on the books of the corporation endorsed thereon: *Cherry* v. *Frost,* 7 Lea, 1. It is insisted that the facts in this case bring it within the exceptional class.

This position rests upon the ground that the agreed statement of facts shows that the piano was kept by the original vendee in a sewing machine store for sale,

where he also kept other pianos, and that the plaintiff permitted him to bring it from Boston to Memphis, presumably for the purpose of sale. This court has held that a trust assignment or mortgage of goods, duly proved and registered, intended to secure particular debts, but leaving the possession of the goods with the assignor to sell in the usual course of trade, and replenish the stock, will be invalid as tending to hinder and delay creditors: *Tennessee National Bank* v. *Ebbert*, 9 Heis., 153; *Nailer* v. *Young*, 7 Lea, 735. See also *Phelps* v. *Murray*, 2 Tenn. Ch., 746. And even where such assignments are held valid as between the parties, a purchaser under the power of sale would of course obtain a good title: *Mitchell* v. *Winslow*, 2 Story, 630; *Brett* v. *Carter*, 3 C. L. J., 286. A conditional sale, with like powers to sell, would be subject to the same rule: *Lewis* v. *McCabe*, 21 Am. Law Reg., 217, and cases cited in note. This court, in analogy to its holding in regard to trust assignments as above, would probably treat a conditional sale of chattels with power in the purchaser to sell as tending to hinder and delay creditors, or contrary to public policy and void.

The contract for the conditional sale of the piano in this case not only does not confer upon the purchaser the power of sale, but fairly implies a prohibition to sell. And there is nothing in the agreed statement of facts to show that the contract was other than what it purports to be on its face. The question, therefore, comes to this, does the fact that the purchaser offered the piano for sale in a sewing ma-

McCombs v. Guild, Church & Co.

chine store where he had other pianos, and actually sold it without the knowledge of the vendor, carry the title, and deprive the vendor of his property? If the proof had shown that the purchaser was a regular dealer in pianos, that the plaintiffs knew the fact, and sold him the piano as such dealer, there might be strong ground for holding the plaintiffs to the consequences of such a transaction. But in the absence of such proof, the facts are not sufficient to sustain an affirmative answer to the question.

The sale by the plaintiffs to Cooper was on the 25th of September, 1875, and by Cooper to the defendant on October 3, 1875. The present action was commenced on the 14th of May, 1879. The defendant had been in the actual adverse possession of the piano for more than three years, claiming it as her own before the plaintiffs brought their suit, or made their demand. The limitation of actions for the recovery of personal property has always been in this State, and is now three years: Code, sec. 2773. And it has long been settled that the possession of personal property for the length of time required to bar the action of the owner for its recovery vests the title in the possessor: *Taylor* v. *Miles*, M. &. Y., 426. The question is, therefore, made in this case that the defendant is protected by the statute.

The action is not in trover, but in contract waiving the tort. It is well settled that a conversion of property will warrant an implication of indebtedness, and that the tort may be waived, and an action *ex contractu* maintianed for its value: *Ott* v. *Whitworth*, 8

Hum., 494; *Alsbrook* v. *Hathaway*, 3 Sneed, 454; *Kirkman* v. *Phillips*, 7 Heis., 222; *Million* v. *Medaris*, 6 Baxt., 132. In the first of these cases, which was decided before the adoption of the Code, the action was *indebitatus assumpsit*, waiving the tort, for the value of the article converted, and the limitation was three years. More than three years had elapsed from the conversion, and the effort was to show a new promise, which failed. In the second case, the action was in debt, and it was held that debt would lie for the value of chattels converted, "let the consequences as to the statute of limitations be what they may." No dates are given, and it does not appear whether more than three years from the conversion had passed or not, but, perhaps, it may be fairly implied that they had. The cause of action in the third case originated after the adoption of the Code, and the proceeding was by bill to recover the value of chattels tortiously taken. The taking occurred in 1863 or 1864, and the bill was filed more than three years after the 1st of January, 1867, when the suspended statutes of limitations went once more into operation. The opinion concedes that under the Code, sec. 2773, if the owner of the property had elected to sue for it, or for damages for its conversion, the action would have been barred in three years. But it was held that if he elects to sue for the value of the property, the limitation would be six years under the Code, sec. 2775. "It is true," says Nicholson, C. J., in the opinion, "that a wrong-doer may obtain a title to the property by three years adverse possesion, and yet be liable for

three years after his title is perfected, to pay the orig-
inal owner the value thereof.   This is a necessary
consequence of the right which the original owner has
to elect whether he will sue for the property or its
value.   During six years, his right to sue for the
value is as perfect as his right to sue for the prop-
erty within three years."

In the last of the cases above cited, the opinion,
delivered also by Nicholson, C. J., states that the ac-
tion was commenced "to recover the value" of three
horses converted by the defendants.   The plea was
the statue of limitations of three years, and the plain-
tiff replied that he commenced his action within three
years next after he discovered the conversion.   The
court held that a demurrer to the replication was well
taken.   The parties and the court treated the limitation
as prescribed by the Code, sec. 2773, which is three
years "for the detention or conversion of personal prop-
erty."   The limitation is six years in "actions on con-
tracts not otherwise provided for" by the Code, sec.
2775.   It is probable that the action was for the de-
tention or conversion of the property, not in contract
for its value as inadvertently stated in the opinion.
And it is very clear from the report of the case that
the distinction taken in the previous cases was not dis-
cussed, nor intended to be changed.   The conclusion
reached in those cases seems to be the logical result
of allowing the injured party to elect to sue upon the
implied contract.   The title to the property becomes
absolute in the possessor, as it would do in the case
of an unconditional sale, while its value, like the pur-

chase money, becomes a debt subject to the limitation applicable to contracts.

There is no error in the judgment, and it must be affirmed.

### DISSENTING OPINION.

TURNEY, J., delivered the following dissenting opinion.

On the 25th of September, 1875, C. S. Cooper bought of Guild, Church & Co., a piano at the price of $325,00; $27.12 being paid, the balance evidenced by Cooper's eleven monthly notes, each for $27.08. By the written contract of sale, it is stipulated, the piano is to remain the property of Guild, Church & Co., until all the payments are made. If the payments are not made, G. C. & Co., have the right to, and may take it back, and for that purpose may enter any building occupied or used in any way by Cooper, without liability for damages or trespass, and without legal process. And so if Cooper removes the piano from the house, or sell, or mortgage, or convey it, without their written consent.

The piano was bought in Boston and removed by Cooper to Memphis. On the 30th of October, 1875, Mrs. McCombs bought the piano from Cooper and paid him $500,00. The contract with Guild, Church & Co., is signed by Cooper alone, and is the basis of this suit, which was commenced against Mrs. McCombs on the 14th of May, 1879. The agreed facts show that Mrs. McCombs believed the piano was the prop-

McCombs v. Guild, Church & Co.

erty of Cooper, and bought and paid for it under such belief. The contract was not registered, and Mrs. McCombs knew nothing of its existence. Guild, Church & Co., made no demand for the piano until March, 1879. The agreement of facts recites: "This piano was kept in a sewing machine store by Cooper, for sale, where persons desirous of purchasing pianos, examined and tried it, he also kept other pianos there." The case was tried by the court without a jury. He gave judgment for defendants in error. It is insisted that under the rule in Tennessee, this was a conditional sale with the title retained until all the purchase money was paid, therefore, the judgment must be affirmed.

The cases upon this subject have arisen in instances where persons have purchased personal property for their individual and private use. No case has been produced extending the rule to embrace sales and purchases between merchant and merchant, in the course of their commercial business. The article in this instance was bought not for the private or family use of Cooper, but to be put upon the market for resale for the sake of the profit of such sale, and in the line of Cooper's business. If the rule shall be construed to include such sales, the result will be to cripple trade. For instance, a merchant in Memphis goes to Boston, New York and Philadelphia, buys boots and shoes of one merchant, groceries of another, domestics of another, silks of another, hats of another, and so on to the completion of purchases of an entire stock, and with each of the dealers from whom

he buys he has a contract similar to the one before us. When his stocks are opened, each man, woman and child who purchases from him is liable to be made to pay the second time for the hat, boots, shoes, coffee, sugar, calico, etc., they may have bought, because of the secret unregistered contract which is in the possession of the Boston, New York or Philadelphia merchants, and the rule may go back and secure the manufacturer or producer, however remote from the retail dealer.

That this was a sale to Cooper as a merchant, I have not the slightest doubt, from the facts. It was kept on sale in a store where Cooper kept other pianos. Cooper being a dealer in such things, we may legitimately conclude he made the fact known at the time of his purchase, that he might get the benefit of the usual reduction to the trade. The long delay to make any claim of Mrs. McCombs, materially strengthens the presumption. If it had been a sale for private use, the statement as to the keeping in a store for sale would have been qualified to that effect. The defendants in error admitting that it was so kept without more, thereby in substance agree that it was sold to Cooper to put on sale. As they give no date of their acquisition of such knowledge, we must presume they knew from the beginning. They voluntarily trusted Cooper and enabled him to impose upon Mrs. McCombs, their conduct has brought about the loss and they should bear it.

The cases allowing the validity of secret conditional sales have gone to the utmost permissible extent, to

say the least. Their comprehension should be con-
tracted rather than enlarged. Their origin was of a
desire to meet hard cases.