PAUL WOODS *vs.* WALTER G. NICHOLS.

PROVIDENCE—FEBRUARY 14, 1900.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1) *Trover. Exercise of Dominion. Caveat Emptor. Conditional Sales.*

A. leased a buggy to B. by written agreement, which stipulated that B. might retain possession for thirty days, paying the agreed price in installments at fixed periods, and that he should not assign, underlet, or part with the possession of the buggy without the written assent of A., the property in the buggy to remain in A. until payment of the agreed price.  B. broke the conditions of the lease and sold the buggy to C., the defendant.  The defendant sold it to D., who took possession thereof. A. thereupon brought trover against C.:—

*Held,* that the sale of the buggy by C. was an act of dominion over the property of A., and that C. was liable for a conversion thereof.  B. having no title to the buggy, C. could acquire none by his purchase.

(2) *Measure of Damages in Conversion.*

*Semble,* by the provisions of the lease B. might retain possession of the buggy for thirty days for $155, paying $50 cash on the first day and the balance, $105, on the last day of the term.  Upon the question of the measure of damages for the conversion of the buggy :—

*Held,* the general rule is that the measure is the value of the property at the time of the conversion.  If the buggy had depreciated in value by the use authorized by the plaintiff, the latter was subject to that loss. If not, under the agreement he was to receive that part of $155 which had not been paid.  Within those limits the damages were open to assessment.

TRESPASS ON THE CASE for trover and conversion.  The facts are stated in the opinion.  Heard on petition of plaintiff for a new trial.  New trial granted.

STINESS, J.   The plaintiff sued in trover for the conversion of a buggy.   January 2, 1899, he leased the buggy to Waldo E. Barnes, Jr., by written agreement, which stipulated that Barnes might have possession of it for thirty days for $155, paying $50 cash on that day, and the balance, $105, on February 1, 1899 ; that he should not assign, underlet, or part with possession of the buggy without the written consent of the plaintiff, and that the property in the buggy was to remain in the plaintiff until the payment of the full sum, at or before the expiration of said time.   Barnes paid $25 down and gave a check for $25, which was protested and has not been paid.   The plaintiff shipped the buggy to Barnes, who sold it, January 4, 1899, to the defendant for $90.   About January 13, 1899, the defendant sold the buggy to Charles C. Ballou, who took it into his possession, and afterwards left it at the defendant's stable temporarily, where it was seen by the plaintiff's son on January 18, 1899.

(1) The defence rested upon the ground that as the defendant had bought the buggy of Barnes for value and without knowledge of the plaintiff's claim, and so sold it to Ballou, who had bought in equal good faith, the defendant, not having possession of the buggy, could not be held liable in trover.

Such a defence is not sufficient.   It ignores the rule *caveat emptor*.   It is clear that Barnes had no title to sell, and hence neither Nichols nor Ballou acquired any by their purchases.   The law as stated in Cooley on Torts, *451, which · is well supported by authority, is as follows :   " One who buys property, must, at his peril, ascertain the ownership, and if he buys of one who has no authority to sell, his taking possession, in denial of the owner's right, is a conversion.   .   .   . So it is no protection to one who has received property and disposed of it in the usual course of trade, that he did so in good faith, and in the belief that the person from whom he took it was the owner, if in fact the possession of the latter was tortious."

The mere possession by Barnes under the agreement was not tortious, but possession with an intention to sell contrary

to the agreement was tortious.  Under the agreement he had no right to sell.  The law in England and in this country is in harmony on the question before us.  In *Hollins* v. *Fowler*, L. R. 7 H. L. 757, the subject was most exhaustively considered, and it may be taken as a definite statement of the law in England.  The case holds that any person who, however innocently, obtains possession of the goods of a person who has been fraudulently deprived of them, and disposes of them, whether for his own benefit or that of any other person, is guilty of a conversion.  In that case the defendants were brokers who had bought cotton from another broker in ignorance of any fraud on his part, and had sold it to spinners who had made it into yarn.  The defendants were held liable in trover.

In *Gilmore* v. *Newton*, 9 Allen (Mass.), 171, the owner of a horse let it to another, who sold it to the defendant.  The latter let it to a person who took it away, and neither he nor the horse had since been seen.  The defendant was held liable for conversion, based upon his letting to the latter as an act of dominion over the property.  In *Carter* v. *Kingman*, 103 Mass. 517, a person had received goods from the owner, with the right to use them and to become the owner of them on fulfillment of conditions; but until then he should not sell or remove them without the owner's consent, and they should not become his till paid for.  He sold them to a third person, who removed and resold them.  It was held that the third person was liable to the owner of the goods for their conversion, although he had acted in good faith and had parted with them before any demand upon him.

In *Robinson* v. *Bird*, 158 Mass. 357, Holmes, J., said: "The defendant is an auctioneer who has sold personal property belonging to the plaintiffs.  Therefore he is liable for a conversion unless he can show some other excuse or justification than his good faith and his ignorance of the plaintiff's title;" citing *Coles* v. *Clark*, 3 Cush. 399; *Hoffman* v. *Carow*, 22 Wend. 285; *Cochrane* v. *Rymill*, 40 L. T. (N. S.) 744; *Hollins* v. *Fowler*, L. R. 7 H. L. 757.  See also *Tuttle*

v. *Campbell,* 74 Mich. 652; *Terry* v. *Bamberger,* 44 Conn. 558; *Morrill* v. *Moulton,* 40 Vt. 242.

Many more cases might be cited to the same effect, and doubtless there are others which are more or less in conflict with them. These, however, are sufficient to establish the rule which we have stated, because they rest upon the sound principle that one cannot be deprived of his property without his consent, and that a purchaser of property, except negotiable instruments, has no better title to it than the vendor from whom he buys it. Such was the decision of this court in *Goodell* v. *Fairbrother,* 12 R. I. 233.

The case at bar showed title in the plaintiff, and a conversion by the defendant in the act of selling. The plaintiff was, therefore, entitled to a verdict in his favor.

(2)     As to the damages, the general rule is that the measure is the value of the property at the time of the conversion. If the buggy had depreciated in value by the use which the plaintiff had authorized, of course he is subject to that loss. But if it had not depreciated, then, under the terms of the agreement, on a sale by him, he was to receive only the balance of $155, the stipulated price, which had not then been paid. Within these limits the damages are open to assessment, and for this purpose a new trial is necessary.

Petition for new trial granted, and case remitted.

*Henry Marsh, Jr.,* for plaintiff.

*Franklin P. Owen,* for defendant.