## CREACH v. RALPH NICHOLS CO.—267 S. W. (2d) 132.

Middle Section. December 4, 1953.

Petition for Certiorari denied by Supreme Court, February 11, 1954.

McLane & Bates, of Nashville, for complainant.

Walker, Hooker, Keeble, Dodson & Harris, of Nashville, for defendant.

HOWELL, J.   The bill in this case alleged that on or about March 22, 1949, complainant was the owner of a 1949 Mercury automobile, Motor No. 9CM-47902, that this car was stolen from the parking area of the Belle Meade Theatre in Nashville, and that complainant had no information as to the whereabouts of his car until it was located by the Federal Bureau of Investigation at Las Alamos, New Mexico, in the possession of D. C. McPherson.   It is alleged that McPherson purchased the car from the Welsh Motor Company of Tulsa, Oklahoma, and later returned it to that Company and it was then in the possession of the Welsh Motor Company, that that Company had purchased the car from one Flippo to whom the car had been sold by the defendant Ralph Nichols Motor Co., and that the complainant at no time parted with the title or right to possession of this car and that the defendant is justly indebted to him for the proceeds of its sale, he having waived any right of action he may have had for tort.   The bill prays that the defendant be required to answer under oath concerning the proceeds of the sale of the car and that he be given a judgment against the defendant for the amount for which it sold the car and interest.

The defendant filed an answer in which it denied that it was indebted to complainant in any amount and sets out: "That defendant has no record of any sale of an automobile bearing motor number 9CM-47902 to any person by the name of Flippo.   That complainant's records do reveal that in the usual course of business complainant did sell an automobile which it had bought in the usual course of business on September 6, 1949 to a Mr. O. C. Flippo, of 4422 West 2nd Street, Tulsa, Oklahoma.   That the said automobile was a two door Mercury, 1949 model

bearing motor number, according to their records, of 9CM-48601. Defendant does not know whether this automobile was the automobile alleged to have been stolen from the plaintiff or not, but assumes in view of the differences in motor numbers that it was not the same automobile. Defendant demands strict proof of the fact that the said automobile was the same car, if deemed material by the Court. Defendant admits that the complainant has never had any transactions with the defendant, but denies that it ever knowingly took possession and sold any automobile in which the title or beneficial interests were in complainant.''

The case was regularly heard by the Chancellor who found the facts and decreed as follows:

''that on March 22d, 1949, complainant had title to a 1949 Mercury, 6 passenger coupe bearing motor No. 9CM-47902, said automobile was stolen from complainant by persons unknown. That thereafter on September 2d, 1949; the defendant in good faith, and without any knowledge that said automobile was stolen, purchased the said automobile in the usual course of its business from one Thomas M. Ferguson, for the purchase price of $2,053.21. That said sale was made to the defendant under a Michigan Certificate of Title showing a motor number 9CM-48601. That defendant's representatives did not check the motor number on the title certificate and compare it with the true motor number on the chassis of the car. That four days later on September 6th, 1949, defendant sold said automobile to one O. C. Flippo for the sum of $2,295.00, out of which sum the defendant paid a commission to its salesman of $114.75.

''Complainant had notified all police authorities

throughout the United States of the theft of his said automobile and in October, 1952, said car was abandoned when caught in a flash flood in the State of New Mexico, and a police investigation of said vehicle showed it to bear motor number 9CM-47902 and to be the identical automobile stolen from complainant.

"Complainant in the original bill in this cause, waived the tort action against defendant for the conversion of his said automobile, and brought his action, instead, for money had and received, or the proceeds of the sale in the hands of the defendant.

"The Court is of the opinion that the defendant was at fault in failing to compare the motor number on the evidence of title with the motor number on the chassis of said automobile and that the equities in this cause are with the complainant.

"The Court is further of the opinion that the facts constitute a conversion by defendant. And that complainant has the right of election of remedies, and that he is entitled to waive action based upon the conversion and to maintain his present action against the defendant for the proceeds of said sale in the sum of $2,295.00.

"It Is Therefore Ordered, Adjudged and Decreed by the Court, that the complainant have and recover a judgment against the defendant, Ralph Nichols Company, in the amount of $2,295.00, together with the costs of this cause, for all of which execution may issue, if necessary."

There is no controversy about the facts.

The defendant has appealed to this Court and has assigned errors which raise principally the question as to whether or not the complainant is entitled to recover

the value of the automobile or the proceeds of its sale by defendant or the profit made by the defendant in its purchase and sale of the car.

In the old case of McDaniel v. Adams, 1889, 87 Tenn. 756, 11 S. W. 939, 940, the Supreme Court said:

"The defendants acquired no title by their purchase from the thief, however innocent they may have been, and their subsequent sale of the property and their refusal to pay over the proceeds thereof to the true owner, upon demand, was a conversion of the property of plaintiff. See [Merchant's National] Bank v. Trenholm [& Sons], 12 Heisk. [520] 521, [59 Tenn. 520], where it is held that the bank, which had advanced money upon the pledges by a factor of his principal's goods, was liable in trover to the principal notwithstanding that the goods had been received in pledge and sold for payment of the factor's debt, in good faith and in ignorance of the true title. This case is well supported by authority on principal. See 4 Amer. & Eng. Cyclop. Law [Vol. IV., pp.] 107-110, and cases cited. In Roach v. Turk, 9 Heisk. 708 [56 Tenn. 708], overruling Taylor [Code & McLeod] v. Pope, 5 Cold., 413 [45 Tenn. 413], it is said that where the defendant has either the property of another, wrongfully taken from the true owner, or the proceeds thereof, and refuses to surrender same, it is the assertion of an adverse claim, and constitutes a conversion. It is difficult to see how it is any more of a hardship upon the innocent purchaser of property stolen to be held liable for the proceeds of resale, than for the property itself. The withholding of the one is as much a conversion as the withholding of the other."

In the later case of Broadway Furniture Co. v. Bates, 170 Tenn. 36, 91 S. W. (2d) 300, 301, the Supreme Court said:

"The general rule is thus stated in 55 C. J., 1311: 'A subsequent purchaser from a buyer may be sued for conversion of the property, although he has resold it and is no longer in possession of it.' The two cases cited to support this text are Elder v. Woodruff Hardware & Mfg. Co., 9 Ga. App. 484, 71 S. E. 806, and Woods v. Nichols, 21 R. I. 537, 45 A. 548, 549, 48 L. R. A. 773. In the Woods Case plaintiff sold a buggy on retained title contract to one Barnes, who sold it to the defendant Nichols, who in turn sold it to a third party, Ballou. Nichol's defense was that he bought the buggy in good faith and did not have it in his possession when the suit in trover was brought. The court said:

" 'Such a defense is not sufficient. It ignores the rule caveat emptor. It is clear that Barnes had no title to sell, and hence neither Nichols nor Ballou acquired any by their purchases. The law, as stated in Cooley, Torts, Sec. 451, which is well supported by authority, is as follows: "One who buys property must, at his peril, ascertain the ownership, and, if he buys of one who has no authority to sell, his taking possession, in denial of the owner's right, is a conversion. * * * So, it is no protection, to one who has received property and disposed of it in the usual course of trade, that he did so in good faith, and in the belief that the person from whom he took it was the owner, if in fact the possession of the latter was tortious."

" 'The mere possession by Barnes under the agreement was not tortious, but possession with an inten-

tion to sell, contrary to the agreement, was tortious. Under the agreement, he had no right to sell. The law in England and in this country is in harmony on the question before us. In Hollins v. Fowler, L. R. 7 H. L., 757, the subject was most exhaustively considered, and it may be taken as a definitive statement of the law in England. The case holds that any person who, however innocently, obtains possession of the goods of a person who has been fraudulently deprived of them, and disposes of them, whether for his own benefit or that of any other person, is guilty of a conversion.'

"The principle involved is the same applied by this court in cases of stolen or wrongfully converted property. McDaniel v. Adams, 87 Tenn. 756, 11 S. W. 939; Merchants' Nat. Bank v. Trenholm, 12 Heisk. 520, 521 [59 Tenn. 520]. Under these authorities and this rule, it is the withholding from the rightful owner of personal property, either the property itself, or the proceeds thereof, that gives rise to the right of action against even an innocent purchaser. As remarked in the McDaniel Case, supra, it is no greater hardship to hold the innocent purchaser liable for the proceeds of the property after sale by him, than for the property itself when found in his hands."

■ It is further insisted for the defendant that the Chancellor erred in holding that the complainant was entitled to waive his action of tort for the conversion and to maintain the present action for the proceeds of the sale of the car rather than for the amount of defendants profit in the transaction.

In his bill the complainant waived his action in tort and sued for the value of the automobile.

In the case of Kirkman v. Philips' Heirs, 54 Tenn. at page 222, the Supreme Court said:

"The allegations of the bill make a case of tort in the taking of the machinery and iron, and a conversion by Moore and Philips, but they show clearly that complainant is seeking to recover the value of the property, and not the property itself, or damages for the tort or conversion. The value so sought to be recovered is claimed to be a debt due from Philips originally, and now from the devisees of Philips who is charged with the last conversion. The bill is therefore maintainable, the tort being, by force of the language of the bill waived, and the value of the property claimed as a debt: Alsbrook v. Hathaway, 3 Sneed, 454 [35 Tenn. 454], Campbell v. Reeves, 3 Head, 226, 228 [40 Tenn. 226]; Bennett v. Kennerly, ib., 674, 675. Although there are many authorities in other states holding that it is only after property has been converted into money that the tort can be waived, and an action for the money maintained, yet in our own State the doctrine is fully settled, that in a case of conversion the complainant has an election to insist either upon damages for the conversion, or to waive these and sue for the value of the property. If the original owner of the property elect to sue for the property or for damages for the conversion, the action will be barred by the statute of three years: Code, Sec. 2773. But if the party elects to sue for the value of the property, the action will be barred in six years: Code, Sec. 2775. It is true, as argued, that a wrongdoer may obtain a title to the property by three years adverse possession, and yet be liable for three years after his title is perfected to pay the

original owner the value thereof. This is a necessary consequence of the right which the original owner has to elect whether he will sue for property or its value. During six years his right to sue for the value is as perfect as his right to sue for the property within three years. This right is not interfered with by the provisions of the Code abolishing the distinctions in the forms of actions. The Statute of Limitations applicable to the cause depends upon the nature and character of the action, and not upon its form. In the case before us, the complainant has elected to waive the tort and to sue for the value of the property converted, and in so doing he is entitled to the benefit of the six years statute. It does not appear on the face of the bill that six years have elapsed from the time of the purchase of the property by Philips until the filing of the bill."

In another case of McCombs v. Guild, Church & Co., 77 Tenn. 81, the Supreme Court held:

"The action is not in trover, but in contract waiving the tort. It is well settled that a conversion of property will warrant an implication of indebtedness, and that the tort may be waived, and an action ex contractu maintained for its value: Ott v. Whitworth, 8 Hum. 494 [27 Tenn. 494]; Alsbrook v. Hathaway, 3 Sneed, 454 [35 Tenn. 454]; Kirkman v. Phillips' Heirs, 7 Heisk. 222 [54 Tenn. 222]; Million v. Medaris, 6 Baxt. 132 [65 Tenn. 132]."

\* \* \* \* \* \*

"The conclusion reached in those cases seems to be the logical result of allowing the injured party to elect to sue upon the implied contract. The title to the property becomes absolute in the possessor, as

it would do in the case of an unconditional sale, while its value, like the purchase money, becomes a debt subject to the limitation applicable to contract."

In this case the complainant was wrongfully deprived of his automobile and later found that the defendant had secured possession of it and had sold it to O. C. Flippo for the sum of $2,295.

We therefore concur with the Chancellor in the finding of facts and are of the opinion that the assignments of error should be overruled and the decree of the Chancellor affirmed. The complainant had a right to and did elect his remedy and waived his action in tort and is therefor entitled to recover from the defendant the proceeds of the sale of his car, $2,295, with interest from the date of the judgment, July 6, 1953, and the costs.

Affirmed.

Felts and Hickerson, JJ., concur.